IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:26-cv-60910-DSL

COPYCAT LEGAL PLLC and DANIEL
DESOUZA,

      Plaintiffs,

v.

CHARLES A. PERALO,

      Defendant.

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Plaintiffs CopyCat Legal PLLC ("CopyCat Legal") and Daniel DeSouza ("DeSouza") (collectively, the "Plaintiffs") hereby file this memorandum in opposition to defendant Charles A. Peralo's ("Defendant") Motion to Dismiss (the "Motion") [D.E. 9], and state as follows:

### INTRODUCTION

The Motion is not a glowing endorsement for the use of ChatGPT to construct coherent legal arguments.[1]  Without citing a single case or even referencing the First Amended Complaint, the Motion relies entirely on generalities and an AI-overview of defamation to argue for dismissal. Ironically, Defendant does not even appear to have proofread his AI-generated work product as one of the arguments raised in the Motion is that "[c]ertain allegations require fact development and are not suitable for resolution at the pleading stage."[2]  Plaintiffs certainly agree that ***nothing*** raised in the Motion warrants dismissal at this stage… notwithstanding ChatGPT's suggestion

---

[1]      On May 7, 2026, Defendant sent undersigned counsel an e-mail stating: "Sent you and the court the motion to dismiss your BS case ***and beat you with ChatGPT***. When I send a bag of dog shit to your office next week, should it be made out to Scamming Dan and Friends or Scamming Dan and Company?" (emphasis added).

[2]      See Motion, at p. 3.

otherwise.

## BACKGROUND

1.       On March 31, 2026, Plaintiffs filed their original Complaint [D.E. 1] in this action. The original Complaint asserts three (3) causes of action: (a) defamation/business disparagement; (b) deceptive and unfair trade practices; and (c) unauthorized publication of name or likeness.

2.       On April 28, 2026, Plaintiffs filed their First Amended Complaint [D.E. 6] which asserts the same causes of action but includes additional allegations pertaining to Defendants' conduct after the original Complaint was filed.

3.       CopyCat Legal is a law firm that primarily represents clients in intellectual property and business litigation matters throughout the United States.[3]  DeSouza is a founder and the managing attorney/partner of CopyCat Legal.[4]

4.       Defendant is a digital content creator who primarily records/produces videos in short form on his YouTube, TikTok, SnapChat, and Instagram channels.[5]  Defendant generates millions of views from consumers of his digital shorts/videos and boasts that he earns $250,000.00 per year from such content.[6]

5.       CopyCat Legal was retained by one of its clients to send a pre-suit copyright infringement notice to Defendant with respect to multiple videos he produced which utilized such client's copyrighted photographs.[7]

6.       Beginning on the same date the pre-suit infringement notice was e-mailed,

---

[3]       See First Amended Complaint, at ¶ 6.

[4]       Id. at ¶ 11.

[5]       Id. at ¶ 15.

[6]       Id. at ¶ 17.

[7]       Id. at ¶¶ 18 – 21.

Defendant sent at least a dozen e-mails to Plaintiffs and made multiple phone calls to CopyCat Legal's staff in which he referred to himself as DeSouza's "master," informed one female employee that another female employee was a "cunt," and threatened to launch an investigation/publish videos about Plaintiffs if their client continued to pursue its infringement claim.[8]

7.     The First Amended Complaint then proceeds to detail multiple defamatory statements made by Defendant in a multitude of YouTube/TikTok videos, online polls, comments in such videos/polls, and other messages between Defendant and third parties.

8.     For example, in Defendant's March 18, 2026 video (the "First Video"), he refers to DeSouza as "Scamming Dan,"[9] states that DeSouza "does not actually practice the law,"[10] states that Plaintiffs conspire with photographers to lure/bait persons into downloading them,[11] and states that DeSouza grossly exaggerates/marks up his legal fees.[12]

9.     Defendant then posted a YouTube poll in which he referred to DeSouza has "running honey pots online, hoping people take the image" and again referring to DeSouza as a scammer.[13]  In the written comments to such poll, Defendant refers to the Dugar Lawsuit (wherein undersigned counsel's client was awarded $193,000.00 in prevailing party fees) and states that Plaintiffs inflated/exaggerated their fees therein.[14]

10.     Beyond his public antics, Defendant likewise privately communicated with many

---

[8]     Id. at ¶ 23.

[9]     Id. at ¶ 29.

[10]     Id. at ¶ 31.

[11]     Id. at ¶¶ 40 – 41.

[12]     Id. at ¶¶ 42 – 43.

[13]     Id. at ¶ 51.

[14]     Id. at ¶ 53.

of his followers/subscribers and stated that Plaintiffs are scammers, that they grossly inflated their billing in the Dugar Lawsuit, that the Dugar Lawsuit took place over a 3-day period such that it was impossible to bill hundreds of hours o such case, that Plaintiffs conspire with their clients o cause businesses/persons to commit copyright infringement, etc.[15]

11.     After he was served with the original Complaint in this action, Defendant on April 21, 2026 published another video (the "Second Video") which again repeats the same misrepresentations concerning Plaintiffs' billing in the Dugar Lawsuit.[16]

12.     New to the Second Video, however, are allegations concerning Plaintiffs' representation of Eclipse Sportswire/Scott Serio in the Sports Mall Lawsuit (wherein Eclipse Sportswire at the summary judgment stage was found to not have standing to pursue a copyright infringement claim because its contract with the subject photographer did not convey exclusive rights under the Copyright Act).

13.     In the Second Video, Defendant accuses Plaintiffs of not filing documents correctly and threatening to sue Mr. Serio for defamation/leaving bad reviews.[17]

14.     Defendant likewise states in the Second Video that more people (other than Mr. Serio) reached out to him saying that DeSouza did an awful job when he was representing him.[18]

15.     The Second Video also accuses DeSouza of engaging in fraudulent conduct.[19]

16.     Defendant repeats that Plaintiffs threatened to sue Mr. Serio for complaining about their representation of him and marks up his legal fees in the Dugar Lawsuit in a comment to one

---

[15]     Id. at ¶ 59.

[16]     Id. at ¶¶ 67 – 69.

[17]     Id. at ¶¶ 74 – 78.

[18]     Id. at ¶ 80.

[19]     Id. at ¶ 81.

of his YouTube polls and in a separate April 27, 2026 lengthy post on YouTube.[20]

17.    The First Amended Complaint unequivocally states that each of these assertions/allegations are false/defamatory.[21]

### ARGUMENT

Although the First Amended Complaint asserts three (3) causes of action, the Motion focuses entirely on the first claim (defamation/business disparagement).  Because Defendant does not mention (let alone discuss) Plaintiff's other claims, he has waived any argument for dismissal thereof.  See, e.g. Bailey v. Lopez-Rivera, No. 4:22-cv-169-AW-MAF, 2023 U.S. Dist. LEXIS 221453, at *2 (N.D. Fla. Dec. 12, 2023) ("[T]he First Amendment retaliation claim against Lopez-Rivera, which the motion to dismiss does not address, is not dismissed."); CHG Med. Staffing, Inc. v. Shafer, No. 23-61703-CIV-SINGHAL, 2024 U.S. Dist. LEXIS 216462, at *1 n.1 (S.D. Fla. July 31, 2024) ("The Motion to Dismiss does not address the permanent injunctive relief sought in Count IX (Injunctive Relief). This claim can thus proceed.").  Plaintiffs shall therefore focus on Defendant's arguments for dismissal of the defamation/business disparagement claim.

### I.    Legal Standard

"For purposes of deciding a motion to dismiss, the Court accepts the allegations of the complaint as true and views the facts in the light most favorable to it."  Martorella v. Deutsche Bank Nat. Trust Co., 931 F. Supp. 2d 1218, 1221 (S.D. Fla. 2013).  "When conducting this analysis, the Court may examine only the four corners of the complaint."  EEOC v. Darden Rests., Inc., 143 F. Supp. 3d 1274, 1278 (S.D. Fla. 2015) (citing St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  Under Rule 12(b)(6), a court shall grant a motion to dismiss where,

---

[20]    Id. at ¶¶ 85 – 91.

[21]    Id. at ¶¶ 59; 66; 70; 74; 79 – 81; 86; 92 – 93; 99 – 101.

based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 555 U.S. 662 (2009).  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, a well pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely."  Id. at 556.

**II.     The First Amended Complaint Adequately States a Claim for Defamation/Business Disparagement**

Under Florida law, the elements of defamation are: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008)).  Put another way, "defamation is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another."  Bongino v. Daily Beast Co., LLC, 477 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020) (quotation marks omitted).

"Words are defamatory under Florida law when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace;" "to injure one in one's business or profession;" or "to deter third persons from associating or dealing with him." Johnston v. Borders, 36 F.4th 1254, 1285 (11th Cir. 2022) (quotation marks omitted).  "Even if the words are not literally false, they may still be defamatory if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." Id. at 1275 (quotation marks

6

omitted).  On the other hand, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment."  Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018).

Here, the First Amended Complaint certainly sets forth each of the requisite elements of Plaintiffs' defamation/business disparagement claim.  The First Amended Complaint alleges that Defendant published (in the First Video, the Second Video, in multiple written comments/polls, and in communications directly with his followers/subscribers) a multitude of false statements about Plaintiffs, that he did so at least negligently, that Plaintiffs suffered actual damages, and that such statements were defamatory.  Indeed, Defendants' own statements to Plaintiffs show that Defendant acted intentionally with the sole purpose of harming Plaintiffs' business, boasting that he will continue defaming Plaintiffs with the goal of causing them to lose more clients.  These are precisely the type of allegations that have found to be sufficient to support a defamation claim (whether per se or per quod).  See, e.g. Holtzman v. B/E Aerospace, Inc., No. 9:07-cv-80551-KAM, 2008 WL 214715, at *3 (S.D. Fla. Jan. 24, 2008) (Marra, J.) (denying motion to dismiss and holding that plaintiff "alleged sufficient facts to state a cause of action for defamation" where plaintiff alleged that defendant "made multiple false statements about the plaintiff (e.g., regarding his resignation, his handling of assignments, and his competence), that [defendant] made these statements to various individuals and corporate officers at BEA 'who had no legitimate reason to be so informed,' and that he suffered damages as a result"); Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1284 (M.D. Fla. 2009) (denying motion to dismiss defamation claim on basis that the plaintiff did not plead with requisite level of specificity).  The factual allegations in this case clearly meet the "short and plain statement" requirement of Rule 8(a)(2).

None of Defendant's ChatGPT arguments warrant serious discussion.  Plaintiffs clearly

identify a multitude of actionable statements of fact – i.e., that Plaintiffs billed $193,000.00 in 2 – 3 days in the Dugar Lawsuit, that Plaintiffs grossly inflated their bills in the Dugar Lawsuit, that Plaintiffs conspire with clients to place photographs online to 'lure' victims into downloading them, that Plaintiffs are committing fraud, that Plaintiffs threatened to sue Mr. Serio when he complained about the results of the Sports Mall Lawsuit, etc.  Any one of these false statements alone is actionable to support Plaintiffs' defamation/business disparagement claim.  Nor are such statements 'opinion' or 'commentary' – they are assertions of fact that, as demonstrated in the First Amended Complaint, a multitude of listeners/viewers believed to be truth.

Defendant next argues that Plaintiff fail to plead falsity "with required specificity,"[22] but claims for defamation (which includes both libel and slander) "need not be pled with particularity under Rule 9(b)."  In re Auto Body Shop Antitrust Litig., No. 6:14-md-2557-Orl-31TBS, 2015 U.S. Dist. LEXIS 114292, at *477 (M.D. Fla. June 3, 2015); see also Caster v. Hennessey, 781 F.2d 1569, 1570 (11th Cir. 1986) (per curiam); Wuchenich v. Shenandoah Mem'l Hosp., No. 99-1273, 2000 U.S. App. LEXIS 11557, at *45 (4th Cir. May 22, 2000) (citing Rule 8 for the proposition that a defamation plaintiff need not plead "the exact words allegedly defaming plaintiff, or the precise occasions on which those statements were made, or to whom they were made"); Okeke v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013) (rejecting the defendant's argument that a defamation complaint must "list the precise statements alleged to be false and defamatory, who made them, and when").  But even if specificity was required, the First Amended Complaint is replete with *specific dates* and *specific statements* made by Defendant.  It is difficult to imagine how the First Amended Complaint could be any more specific.

Defendant next argues that Plaintiffs fail to adequately plead damages, yet apparently

---

[22]    See Motion, at p. 3.

8

ignores that Plaintiffs assert they lost at least one client that was poised to hire them to defend a malicious prosecution lawsuit,[23] that another client questioned Plaintiffs' continued representation of her given Defendants' statements,[24] and that Plaintiffs estimate lost earnings of at least $100,000.00 from losing the malicious prosecution defense client alone.[25]   Further, the bulk of Defendant's statements (i.e., that Plaintiffs violated the Florida Rules of Professional Conduct, committed fraud, exaggerated their billing, threatened to sue former clients for defamation, etc.) actually amount to slander per se for which general damages are presumed.  See, e.g. Hoch v. Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., 742 So. 2d 451, 457 (Fla. 5th DCA 1999) ("In slander per se actions, general damages are presumed; for per quod actions, the plaintiff must allege and prove special damages."); Lawnwood Med. Ctr. Inc. v. Sadow, 43 So. 3d 710, 729 (Fla. 4th DCA 2010) ("[W]hen the claim is defamation per se, liability itself creates a conclusive legal presumption of loss or damage."); NITV, L.L.C. v. Baker, 61 So. 3d 1249, 1254 (Fla. 4th DCA 2011) ("In slander per se actions, general damages are presumed."); Hood v. Connors, 419 So. 2d 742, 743 (Fla. 5th DCA 1982) ("The primary difference between [slander per se and per quod claims] is that for per se actions general damages will be presumed, but for per quod actions the plaintiff must allege and prove special damages.").

Finally, Defendant asserts that Plaintiffs fail to allege actual malice "if applicable."[26]  It is not.  "A plaintiff who is a 'public official' must overcome the First Amendment by proving that a false statement relating to his official conduct was made with 'actual malice[.]'"  Lovingood v. Discovery Commc'ns, Inc., 800 F. App'x 840, 845-46 (11th Cir. 2020) (quoting N.Y. Times Co.

---

[23]     See First Amended Complaint, at ¶ 45 – 47.

[24]     Id. at ¶ 48.

[25]     Id. at ¶ 103.

[26]     See Motion, at p. 3.

v. Sullivan, 376 U.S. 254, 279-80 (1964) (cleaned up)).  Plaintiffs are not 'public officials.'  They are a private law firm and a private attorney who were retained by a client to send a Rule 408 settlement letter/infringement notice to Defendant.  But even if Plaintiffs were somehow required to show actual malice, the First Amended Complaint plainly sets forth Defendant's reckless disregard/deliberate misrepresentation of the truth.  For example, the First Amended Complaint states that Defendant made his 'gross overbilling' allegations after the entire history of the Dugar Lawsuit was explained to him in a telephone call.[27]  Defendant openly accuses Plaintiffs of conspiring to create 'honey pots' of infringing material, threatening to sue former clients for defamation, etc. – none of which he had any basis to assert.  Defendant's written statements that he "found it hilarious" Plaintiffs lost clients and "my intention is you lose each and every single one,"[28] coupled with Plaintiff's assertion that Defendant knew his defamatory statements were false a the time they were made,[29] are certainly sufficient to support a finding of malice if such was somehow required (it is not).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (a) denying the Motion; (b) requiring Defendant to file his Answer to the First Amended Complaint within fourteen (14) days thereof; and (c) for such further relief as the Court deems proper.

Dated: May 18, 2026.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

---

[27]    See First Amended Complaint, at ¶ 38.

[28]    Id. at ¶¶ 95 – 96.

[29]    Id. at ¶ 102.

talia@copycatlegal.com

By: /s/ Daniel DeSouza
       Daniel DeSouza, Esq.
       Talia Manreza Vives, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on May 18, 2026, the foregoing document was served on Defendant via US Mail/Federal Express to Charles A. Peralo, 21 Scarborough Circle, Rock Hill, NY 12775 and via e-mail to: Charles@Peralo.com.

By: /s/ Daniel DeSouza
Daniel DeSouza, Esq.