UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:26-cv-60910-LEIBOWITZ

COPYCAT LEGAL PLLC and
DANIEL DESOUZA,

     *Plaintiffs*,

*v.*

CHARLES A. PERALO,

     *Defendant.*

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Charles A. Peralo's ("Defendant" or "Peralo") Motion to Dismiss (the "Motion") [ECF No. 9], filed on May 11, 2026.  Plaintiffs CopyCat Legal PLLC ("CopyCat Legal") and Daniel DeSouza ("DeSouza") (collectively, "Plaintiffs") responded in opposition [ECF No. 12] and Defendant waived reply.  The Court has reviewed the parties' arguments, the record, and the relevant legal authorities.  For the reasons stated below, the Motion [**ECF No. 9**] is **DENIED**.

### I.    BACKGROUND AND THE INSTANT MOTION

On March 31, 2026, Plaintiffs filed this defamation action brought pursuant to state law, the Florida Deceptive and Unfair Trades Practice Act ("FDUPTA"), Section 501.201 et seq., and Section 540.08, Florida Statutes.  [ECF No. 1 ¶¶ 67–83].  Since the inception of this action, Plaintiffs have filed a First Amended Complaint.  [*See* ECF No. 6].  The facts alleged are as follows:

CopyCat Legal is a law firm that primarily represents clients in intellectual property and business litigation matters where DeSouza is a founder and managing partner.  [*Id.* ¶¶ 6, 11].  Peralo

is a digital content creator on YouTube, TikTok, SnapChat, and Instagram platforms where he generates millions of views on his digital shorts/videos. [*Id.* ¶¶ 15, 17].

In an underlying copyright infringement matter that predated this action, a photography agency retained CopyCat Legal after discovering that Defendant was using its professional photographs as the thumbnail/cover photograph for a multitude of Defendant's YouTube, TikTok, and other for-profit videos. [*Id.* ¶¶ 18–19]. On March 17, 2026, CopyCat Legal sent Defendant a cease-and-desist letter, demanding that Defendant cease using the allegedly infringing photographs. [*Id.* ¶ 21]. Defendant refused and responded that the videos "will remain up, and will be used in future content. In fact, I will find a way to use some of these images again today." [*Id.* ¶ 22]. Rather than dispute the alleged copyright infringement on its merits, Defendant continued to harass Plaintiffs and call CopyCat Legal's employees obscenities. [*Id.* ¶¶ 23–24].

Defendant's tirade did not stop there; he moved on to attack and disparage CopyCat Legal publicly. [*Id.* ¶ 25]. On March 18, 2026, he posted a six-minute video titled "This guy is 'suing' me," asserting that "we're going to call him Scamming Dan," that "CopyCat Legal is focused on filling pockets," and that "Scamming Dan does not actually practice the law." [*Id.* ¶¶ 26–31 (alteration adopted)]. In the same video, Defendant made allegedly false comments regarding a previous case that Plaintiffs had tried and made misrepresentations about the case to his viewers/subscribers. [*See id.* ¶¶ 32–40]. He also called DeSouza "a disgusting person" for purportedly marking up legal fees. [*Id.* ¶ 43]. As of the filing of the Amended Complaint, the video has been viewed approximately 205,000 times. [*See id.* ¶ 44].

Defendant's actions have allegedly caused Plaintiffs substantial loss. For instance, on March 13, 2026, a Florida attorney who DeSouza previously represented reached out to DeSouza concerning potential engagement for that attorney's malicious prosecution action. [*Id.* ¶ 45]. One week later, the same attorney e-mailed DeSouza and told him that he had seen the defamatory video and, as a result,

decided to hire a different attorney.  [*Id.* ¶ 47].  That same month, another client of CopyCat Legal e-mailed DeSouza stating that she had seen the video and was deeply concerned about CopyCat Legal's continued representation of her and how it could reflect poorly on her own reputation.  [*Id.* ¶ 48].

After posting the video, Defendant published a poll on YouTube in which he asked viewers whether DeSouza is a scammer.  [*Id.* ¶ 51].  Peralo pinned a comment, remarking that DeSouza "has a law firm called copycat legal, where he sues 4,000+ people per year for misuse of images, only charges clients if he wins, so he can use loser pays to his advantage and likely is running honey posts online, hoping people take the image."  [*Id.*].  Peralo subsequently leaked DeSouza's e-mail address and encouraged his viewers and subscribers to "trash" DeSouza.  [*Id.* ¶ 52].  This poll garnered approximately 235,000 votes at the time the Amended Complaint was filed.  [*Id.* ¶ 54].

Defendant continued to harass Plaintiffs and send extortionate emails, threatening to have DeSouza disbarred.  [*Id.* ¶¶ 57–58].  He even encouraged his followers and subscribers to follow suit and harass Plaintiffs in the same manner.  [*Id.* ¶ 60].  Indeed, many of his followers did so.  [*See id.* ¶¶ 61–62].  After Defendant was served with the original Complaint, he posted a second video, titled "This guy is trying to sue me again," which repeated earlier misrepresentations and even introduced new lies concerning Plaintiffs' prior representation of Eclipse Sportswire.  [*Id.* ¶¶ 67–70].  Yet again, Defendant deliberately misrepresented the case and accused Plaintiffs of engaging in fraud.  [*Id.* ¶¶ 74–81].

Then, on April 21, 2026, Defendant posted a poll on YouTube that depicted DeSouza finger picking his nose.  [*Id.* ¶¶ 83–84].  Defendant touted that DeSouza purportedly threatened to sue his client, another defamatory comment.  [*Id.* ¶ 85].  Six days later on April 26, 2026, Defendant made a lengthy post on YouTube once more claiming that DeSouza marks up legal services to defraud clients.  [*See id.* ¶¶ 88–90].

Plaintiffs allege three claims: (1) Defamation/Business Disparagement (Count I); (2) FDUTPA violation (Count II); and (3) Unauthorized Publication of Name or Likeness (Count III). [*Id.* ¶¶ 98–115]. Defendant moves to dismiss only Count I of the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. [*See* ECF No. 9 at 1–3].

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a Rule 12(b)(6) motion, generally a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

4

### III.    DISCUSSION

The Court will deny the Motion.  In support of dismissal, Defendant argues, *inter alia*, that Plaintiffs have failed to state a defamation claim because the alleged defamatory statements are nonactionable and constitute mere opinion.  [ECF No. 9 at 2–3].  Barring one exception, Defendant does not address Plaintiffs' two other claims-- so the Court declines to assess them under Rule 12(b)(6).  The Court now turns to Defendant's arguments.

### A.  Plaintiffs Have Properly Stated a Defamation Claim.

The Court disagrees with Defendant that Plaintiffs have failed to allege facts sufficient to support a plausible defamation claim.  Defendant offers nine conclusory arguments, each of which essentially rephrase his general position that "the Complaint fails to state a claim for defamation or related causes of action."  [*See* ECF No. 9 at 1].

"To prove defamation under Florida law, a plaintiff must establish the following elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1105–06 (Fla. 2008)).

First, the element of publication.  Publication is established where the defamatory statement is published or communicated to a third person.  *Wiener v. Boca W. Country Club, Inc.*, No. 25-CV-80039, 2025 WL 1220106, at *2 (S.D. Fla. Apr. 28, 2025) (citing *Am. Airlines, Inc. v. Geddes*, 960 So.2d 830, 833 (Fla. 3d DCA 2007)).  "[S]tatements made to the person alleging the defamation do not qualify."  *Id.*  Here, the Defendant published multiple videos containing the statements on his social media accounts directed at Plaintiffs.  [*See* ECF No. 6 ¶¶ 26, 67].

Next, falsity.  "A statement (or any implication thereof) cannot be defamatory if the gist or the sting of the statement is true."  *Utterback v. Morris*, No. 24-12947, 2025 WL 1455900, at *6 (11th

Cir. May 21, 2025) (cleaned up).  As alleged, these videos contained several false representations, including that Plaintiff "grossly inflated" his billing.  [ECF No. 6 ¶ 59].

Third, the prong of knowledge is satisfied here.  "Public figures, the [Supreme] Court said, cannot recover damages for defamation unless they prove that an untrue statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Dershowitz v. Cable News Network, Inc.*, 153 F.4th 1189, 1193 (11th Cir. 2025) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  For private citizens, however, plaintiffs need only allege negligence.  *See Johnston*, 36 F.4th at 1275.  Although Plaintiffs here are private citizens [*see* ECF No. 6 ¶¶ 6, 11] and thus need only allege negligence, they do more and aver that Defendant knew these statements were false when made.  [*Id.* ¶¶ 59, 101–02].

Up next: the fourth element of the defamation claim is damages.  The Amended Complaint satisfactorily alleges damages because, as a result of Defendant's videos and defamatory acts, Plaintiffs lost at least one client.  [ECF No. 6 ¶¶ 47, 103].

Finally, Plaintiffs must show that the publication was defamatory.  "Words are defamatory under Florida law when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession."  *Johnston*, 36 F.4th at 1275 (11th Cir. 2022).  Defendants' actions, such as calling DeSouza a "scammer," "disgusting person," and a fraudster who rips off clients certainly qualifies as defamatory under *Johnston*.  [*See* ECF No. 6 ¶¶ 29, 43, 81].  Similar defamatory allegations exist as to Plaintiff CopyCat Legal.  [*See id.* ¶ 30 ("CopyCat Legal is focused on filling pockets . . . ." (alteration adopted)].  Accordingly, Plaintiffs have stated a plausible claim for defamation under Florida law.

Defendant's other arguments are completely meritless.  For instance, Peralo claims that Plaintiffs failed to plead their defamation claim with the required specificity under Rule 9(b).  [*See* ECF No. 9 at 2].  But defamation claims "need not be pled with particularity under Rule 9(b)."  *See, e.g., In*

*re Auto Body Shop Antitrust Litig.*, No. 14-md-2557, 2015 WL 4887882, at *21 (M.D. Fla. June 3, 2015); *see also Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (per curiam) (declining to apply heightened pleading standard for defamation).

Defendant's contention that his alleged defamatory statements are mere opinion, commentary, or hyperbole fares no better.  [*See* ECF No. 9 at 2–3].  "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole." *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 5305468, at *3 (S.D. Fla. Oct. 15, 2014) (citation omitted).  "In determining whether an allegedly defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount." *Id.* (citations omitted).  At this stage, the Court concludes that these statements are assertions of fact that are undoubtedly actionable.  This claim can move forward.

Accordingly, the Court DENIES the Motion as to Count I of the First Amended Complaint.

## B.  Defendant Does Not Address Plaintiffs' Other Claims.

The Court agrees with Plaintiffs that Defendant "focuses entirely on the first claim."  [ECF No. 12 at 5].  Since Defendant has not addressed the FDUPTA[1] or unauthorized publication of name or likeness claims, he has waived any argument for dismissal vis-à-vis those counts. *See, e.g. Bailey v. Lopez-Rivera*, No. 22-cv-169, 2023 WL 8622347, at *2 (N.D. Fla. Dec. 12, 2023) ("[T]he First Amendment retaliation claim against Lopez-Rivera, which the motion to dismiss does not address, is

---

[1]    To the extent Defendant does contend (albeit summarily) that Plaintiffs failed to plead falsity with required specificity concerning all claims [*see* ECF No. 9 at 2], this argument still fails.  The FDUTPA claim is the only other conceivable claim that would invoke Rule 9(b)'s heightened pleading requirement. *See Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1294 (11th Cir. 2025) ("We hold that FDUTPA claims that sound in fraud must comply with Rule 9(b)'s particularity requirement."); [ECF No. 6 ¶ 107 ("Defendant's campaign of spreading false and disparaging statements about Plaintiffs constitutes a 'deceptive act or practice' in the conduct of trade/commerce.")].  And Plaintiffs' First Amended Complaint clearly meets the Eleventh Circuit's requirements of alleging "the who, what, when, where, and how of the fraud alleged." *Ominpol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022) (citing *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)).

not dismissed."); *CHG Med. Staffing, Inc. v. Shafer*, No. 23-61703-CIV, 2024 WL 4881026, at *1 n.1 (S.D. Fla. July 31, 2024) ("The Motion to Dismiss does not address the permanent injunctive relief sought in Count IX (Injunctive Relief). This claim can thus proceed.").

Accordingly, the Court DENIES the Motion as to Counts II and III of the First Amended Complaint.

### C.  Use of Artificial Intelligence

Unfortunately, the Court must also address what appears to be Defendant's use of Artificial Intelligence ("AI") in drafting the Motion.  In their response, Plaintiffs represent that Defendant sent Plaintiffs' counsel an e-mail conceding that AI was used to draft a submission to the Court.  [*See* ECF No. 12 at 1 n.1].  The Motion is indeed rife with indicia of AI-generated material, such as general statements of law unsupported by legal authority.  [*See generally* ECF No. 9].

It is well-settled that Rule 11 of the Federal Rules of Civil Procedure "applies equally to pro se litigants."  *Grimshaw v. Metro. Life Ins. Co.*, No. 11-14165-CIV, 2011 WL 13319575, at *1 (S.D. Fla. Aug. 2, 2011) (citing *Meidinger v. Healthcare Indus. Oligopoly*, 391 F. App'x 777, 778 (11th Cir. 2010)); *see also Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 applies to pro se plaintiffs . . . ."). In relevant part, Rule 11 reads:

> **Representations to the Court**.  By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney *or unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(2) (emphasis added).

Aside from Rule 11, "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). "To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith." *Versant*, 2025 WL 1440351 (citing *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x. 930, 931 (11th Cir. 2006)). Courts employ a subjective bad-faith standard here. *See Purchasing Power, LLC*, 851 F.3d 1219, 1224 (11th Cir. 2017). A subjective bad-faith standard can be met if a party's conduct is so egregious that it could only be committed in bad faith. *See id.* at 1224–25. While recklessness alone cannot constitute bad faith, a filing that is both reckless and frivolous can constitute bad faith. *Id.* at 1223–25.

"Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah Servs., Inc. v. Exxon Corp*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (Gold, J.) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993)); *see also Quantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1268–69 (S.D. Fla. 2007) (Martinez, J.). When the court uses its inherent powers to punish a party, there must be a direct causal link between the condemned conduct and the resulting costs. *See Haeger*, 581 U.S. at 108. Sanctions under the Court's inherent powers are compensatory, not punitive. *See id.*

Because this is the first time Defendant has used AI before this Court, the Court will not impose sanctions at this time. Courts in this District have not hesitated to sanction parties, even *pro se* litigants, for filing erroneous or frivolous AI-generated submission. *See, e.g., O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *6–7 (S.D. Fla. Jan. 10, 2025) (Damian, J.) (dismissing *pro se* plaintiff's action for filing memorandum based in part on non-existent case law under the court's inherent authority). *Defendant is now on actual and constructive notice that using AI to submit frivolous filings that contain*

*errors or otherwise waste the Court's time and resources is prohibited.*  Defendant is *instructed* to no longer do so;

any subsequent filing may be deemed to be filed in bad faith and result in the imposition of sanctions.

### IV.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [**ECF No. 9**] is **DENIED**.

2. Defendant shall file an Answer to the First Amended Complaint **no later than fourteen (14) days** from the date of this Order.

**DONE AND ORDERED** in the Southern District of Florida on June 11, 2026.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:      counsel of record
         Charles A. Peralo, *pro se*

10