IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:26-cv-60910-DSL

COPYCAT LEGAL PLLC and DANIEL
DESOUZA,

     Plaintiffs,

v.

CHARLES A. PERALO,

     Defendant.

**PLAINTIFFS' MOTION FOR DEFAULT FINAL JUDGMENT (LIABILITY ONLY)**

Plaintiffs CopyCat Legal PLLC and Daniel DeSouza (collectively, the "Plaintiffs"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment (liability only) against defendant Charles A. Peralo ("Defendant"), and state as follows:

**PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT**

1.     On March 31, 2026, Plaintiffs filed their Complaint in this action. See D.E. 1.

2.     On April 18, 2026, Defendant was personally served with a copy of the Summons and Complaint. See D.E. 5.

3.     On April 28, 2026, Plaintiffs filed their First Amended Complaint. See D.E. 6.

4.     On May 11, 2026, Defendant filed his Motion to Dismiss. See D.E. 9.

5.     On June 11, 2026, the Court entered an Order [D.E. 13] denying Defendant's Motion to Dismiss. See D.E. 13. That Order required Defendant to file his Answer to the First Amended Complaint "no later than fourteen (14) days from the date of this Order" (i.e., by June 25, 2026).

6. On July 2, 2026, Plaintiffs filed a Motion for Clerk's Default against Defendant. See D.E. 20.

7. On July 2, 2026, the Clerk entered a Default against Defendant. See D.E. 21.

8. On July 2, 2026, Plaintiffs filed a Motion to Allow Filing of Unilateral Scheduling Report (given Defendant's refusal to cooperate in preparing/consenting to such). See D.E. 22.

9. On July 7, 2026, the Court entered an Order denying the Motion to Allow Filing of Unilateral Scheduling Report which likewise required Defendant to file his Answer to the First Amended Complaint "no later than July 16, 2026." See D.E. 23.

10. To date, Defendant has not filed any Answer to the First Amended Complaint.

## FACTUAL SUPPORT FOR DEFAULT JUDGMENT[1]

### I. Plaintiffs' Business[2]

6. CopyCat Legal is a law firm that primarily represents clients in intellectual property and business litigation matters throughout the United States.

7. CopyCat Legal represents over 200 clients in both transactional and litigation matters throughout the country.

8. Its attorneys have appeared in and litigated over 800 federal court lawsuits in Florida, New York, California, Texas, and a multitude of other states around the United States.

9. In addition to trial courts, CopyCat Legal's attorneys have appeared in and argued multiple appellate proceedings, including at least two (2) cases in which CopyCat Legal's clients

---

[1] "When a defendant defaults, it admits as true all well-pleaded factual allegations in the complaint." Enable Creative, LLC v. Charles Rutenberg Realty, LLC, No. 19-20789-CIV-MARTINEZ/MCALILEY, 2019 U.S. Dist. LEXIS 155224, at *2 (S.D. Fla. Sep. 10, 2019) (citing Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007)).

[2] The facts set forth herein are based upon the well-pleaded allegations of the Complaint and the July 20, 2026 Declaration of Daniel DeSouza (the "DeSouza Decl."), a true and correct copy of which is attached hereto as **Exhibit "A."**

successfully opposed petitions for writ of certiorari at the United States Supreme Court.

10.     From its inception in 2019 through the present date, CopyCat Legal has built a stellar reputation amongst professional creatives (who comprise the bulk of CopyCat Legal's clients) and the legal community.  CopyCat Legal regularly writes on intellectual property topics, hosts webinars for clients/prospective clients, and participates in speaking engagements on intellectual property subjects around the country.

11.     DeSouza is a founder and the managing attorney/partner of CopyCat Legal.

12.     DeSouza is a 2004 graduate of the George Washington University Law School and is admitted to the Florida Bar, the New York Bar, the D.C. Bar, the New Jersey Bar, the Pennsylvania Bar, and the Georgia Bar.  He is likewise admitted to several federal courts throughout the country, including: the United States Supreme Court; the United States Court of Appeals for the Eleventh Circuit; the United States Court of Appeals for the Eighth Circuit; the United States Court of Appeals for the Tenth Circuit; the United States Court of Appeals for the Second Circuit; the United States District Court for the Southern District of Florida; the United States District Court for the Middle District of Florida; the United States District Court for the Northern District of Florida; the United States District Court for the Southern District of Texas; the United States District Court for the Eastern District of Texas; the United States District Court for the Southern District of New York; the United States District Court for the Eastern District of New York; the United States District Court for the Northern District of New York; the United States District Court for the Western District of New York; the United States District Court for the Western District of Arkansas; the United States District Court for the District of Nebraska; the United States District Court for the District of New Mexico; the United States District Court for the District of Colorado; the United States District Court for the Eastern District of Michigan; the

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

United States District Court for the Western District of Michigan; the United States District Court for the Northern District of Illinois; the United States District Court for the District of Maryland; the United States District Court for the Western District of Texas; the United States District Court for the Eastern District of Missouri; the United States District Court for the District of Columbia; the United States District Court for the Eastern District of Oklahoma; the United States District Court for the District of New Jersey; the United States District Court for the Eastern District of Pennsylvania; the United States District Court for the Western District of Pennsylvania; the United States District Court for the Middle District of Pennsylvania; the United States District Court for the Northern District of Indiana, and the United States District Court for the Northern District of Georgia.

13.     He previously worked at Milbank, Tweed, Hadley & McCloy LLP (from 2004 – 2010) and Becker & Poliakoff, PA (from 2010 – 2014) before forming DeSouza Law, P.A. in 2014 and CopyCat Legal in 2019.

14.     Since 2004, DeSouza's practice has principally focused on business/complex commercial and intellectual property litigation.  He has appeared in a multitude of state and federal lawsuits across the country, has served as lead counsel in multiple jury/non-jury trials, and is a well-respected practitioner amongst his peers, clients, and opponents.

## II.     Defendant's Business

15.     Defendant is a digital content creator who primarily focuses on producing videos in short form for his YouTube, TikTok, SnapChat, and Instagram viewers. Defendant promotes on his social media to have "over 2 million followers across social media, 2.5 billion views and the over 4 billion impressions in polls/quizzes." Defendant also promotes to have "been consistently one of the biggest YouTube shorts creators" and "one of the highest earning Snapchat creators of

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

all time."

16.     Defendant advertises/markets his business through his social media (e.g., https://www.youtube.com/user/Charlesperalo, https://www.instagram.com/charlesperalo/, https://www.instagram.com/charlesperalo/, https://www.facebook.com/charlesperalo/, https://www.tiktok.com/@charlesperalo?lang=en, https://www.snapchat.com/@charlesperalo, and https://www.threads.com/@charlesperalo) and other forms of advertising.

17.     Defendant generates millions of views from consumers of his digital shorts/videos. Those views translate into income for Defendant who boasts that he earns "$250,000 per year off TikTok, YouTube and Snapchat."

## III.     The Underlying Copyright Infringement Matter

18.     One of CopyCat Legal's clients is a photography agency that represents (all around the world) over 100 professional portrait, lifestyle, beauty, and fashion photographers.

19.     Such client discovered that Defendant was utilizing at least fourteen (14) of its professional photographs as the thumbnail/cover photograph for a multitude of YouTube, TikTok, and other for-profit videos in which Defendant speaks as to various topics concerning the actor who is the subject of such photograph.  Examples of such are displayed below:









20.     After discovering what it believed to be infringement of its copyrights in the subject photographs, the client retained CopyCat Legal to send a pre-suit infringement notice to Defendant and, if necessary, to pursue a lawsuit in connection therewith.

21.     In connection therewith, on March 17, 2026, CopyCat Legal sent Defendant (via e-mail and US Mail) a letter (signed by DeSouza) with respect to Defendant's alleged infringement of its client's photographs.   The letter demanded that Defendant cease using the subject photographs and likewise included a monetary proposal to resolve Defendant's alleged

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

infringement.

22.     In response (beginning on the same date), Defendant lashed out in a tirade against Plaintiffs and their client, first proclaiming that the videos utilizing the subject photographs "will remain up, and will be used in future content.  In fact, I will find away to use some of these images again today."

23.     Following this initial e-mail, Defendant sent at least a dozen other e-mails to Plaintiffs and made several telephone calls to Plaintiffs to express his apparent displeasure with receiving notice of his alleged infringement of copyright.

24.     Rather than address the merits of the copyright claim, Defendant opted instead to call a female employee of CopyCat Legal a "cunt," told the receptionist at CopyCat Legal (another female employee) to inform the aforementioned female employee that she is a "cunt," referred to himself as DeSouza's "master," and threatened to launch an investigation/publish videos about Plaintiffs if their client pursued its copyright infringement claim against Defendant.

**IV.     Defendant's Continued Defamatory/Disparaging Conduct**

25.     Unhappy with the fact that his threatening e-mails and foul comments to CopyCat Legal's female staff were not dissuading Plaintiff's client from pursuing its copyright infringement claim, Defendant opted for a new tactic of directly disparaging/defaming Plaintiffs to his approximately 2 million followers/subscribers.

26.     On March 18, 2026, Defendant published a video on his YouTube, TikTok, and/or other social media platforms titled "This guy is 'suing' me" (hereinafter, the "Video").

27.     The Video is approximately 6 minutes long, uses a photograph of DeSouza as the thumbnail/cover photograph of the video, and displays several other photographs of DeSouza/CopyCat Legal's staff throughout the Video.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

28.     The Video starts by stating that 'this guy' (DeSouza) is trying to sue Defendant for $280,000.00, specifically identifying DeSouza as "Daniel DeSouza, a lawyer out of Florida."

29.     The Video then goes on to remark that, for the purposes of the remainder of the Video, "we're going to call him Scamming Dan."

30.      Defendant then speaks about CopyCat Legal, displaying a caption over a screenshot of the firm's website stating that "CopyCat Legal [is] focused on filling pockets" while claiming to help photographers.

31.     Defendant then proclaims that Plaintiffs do not know the law regarding copyright "because Scamming Dan does not actually practice the law."

32.     Defendant then states that DeSouza 'bragged' to Defendant that he won $203,000.00 in a case recently to which Defendant states he wanted to know "what the hell" that case was about.

33.     The video then goes on to purportedly discuss the outcome of Harrington v. Deepak Dugar, M.D., Case No. 2:22-cv-08230 (C.D. Cal.) (the "Dugar Lawsuit").

34.     The Dugar Lawsuit involved a claim for copyright infringement with respect to a single photograph by one of Plaintiffs' clients against a plastic surgeon in Beverly Hills, California.

35.     The Dugar Lawsuit was filed on April 20, 2022 and proceeded to a 3-day trial from May 28, 2024 – May 30, 2024 for which the jury returned a $10,000.00 verdict in Plaintiffs' client's favor.

36.     Following the trial, Plaintiffs' client filed a motion for prevailing party fees which may be awarded (by discretion) under the Copyright Act.  That motion sought an award with respect to more than 370 hours of fees incurred by DeSouza, an associate attorney, and multiple paralegals throughout the > 2 years the Dugar Lawsuit was litigated (during which time there were

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

> 230 docket entries).

37.     The defendant in the Dugar Lawsuit opposed the motion for fees and, following a hearing thereon, Judge Vera of the Central District of California issued an 11-page opinion awarding 100% of the fees sought by Plaintiffs' client ($193,032.50), concluding: "Considering this case concluded in a jury trial and verdict, the Court finds that the total of 370.3 hours was reasonable."

38.     Although DeSouza explained the outcome of the Dugar Lawsuit to Defendant on a telephone call, Defendant chose to grossly misrepresent the facts of the case to his viewers/subscribers in an effort to disparage Plaintiffs.

39.     In the Video, Defendant purports to explain the background facts of the Dugar Lawsuit, noting that Plaintiffs' client was awarded $10,000.00 and then stating that "what Scamming Dan did after that is absolutely immoral."

40.     Defendant then remarks that Dr. Dugar "got scammed by Scamming Dan in the first place.  Because what happens is a lot of law firms like Scamming Dan's law firm, they actually work with these photographers to place the photos strategically online hoping people use them just so they get baited and putting them on their website and they can try to sue them later on because they have a bunch of bots and they try to make thousands of lawsuits every single year."

41.     Defendant then remarks that 'Scamming Dan' is likely in on it (the aforementioned scam described by Defendant).

42.     Defendant then goes on to say that DeSouza is telling clients that he will represent them for free, but if he wins, "I get to grossly exaggerate how much money we're going to do here."

43.     Defendant then goes on to state that DeSouza is marking up legal fees so grossly

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

that he is "a disgusting person."

44.     The Video has been viewed approximately 175,000 times by Defendant's subscribers/followers and various other persons, including multiple persons in Florida.

45.     For example, on March 13, 2026, a Florida attorney who DeSouza has previously represented in a civil matter reached out to DeSouza with respect to a lawsuit that had recently been filed against such attorney in the United States District Court for the Southern District of Florida.

46.     Given DeSouza's prior representation of such attorney, he was inquiring whether DeSouza could represent him in the 219-paragraph malicious prosecution action that had been filed against him.

47.     Although DeSouza and the attorney were finalizing terms for such representation, on March 20, 2026 that attorney e-mailed DeSouza that he (while in Boca Raton, FL) had watched the Video and, as a result, decided to hire a different attorney to represent him in the malicious prosecution lawsuit.

48.     On March 19, 2026, one of CopyCat Legal's clients likewise e-mailed DeSouza stating that she had seen the Video and was deeply concerned by the content of such and believed CopyCat Legal's continued representation of her could reflect poorly on her own reputation given the substance of Defendant's assertions.

49.     Upon information and belief, at least 1,000 different individuals who were physically located in Florida viewed the Video and read the various comments/remarks made thereon.

50.     This includes at least a dozen non-attorney employees of CopyCat Legal, at least one prospective client of DeSouza, and at least two (2) other Florida attorneys who Plaintiffs have

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

previously worked with.

51.     After posting the Video, Defendant published a poll on YouTube in which he asked viewers whether DeSouza is a scammer.  In the first pinned comment thereon, Defendant remarked that DeSouza "has a law firm called copycat legal, where he sues 4,000+ people per year for misuse of images, only charges clients if he wins, so he can use loser pays to his advantage and likely is running honey posts online, hoping people take the image."

52.     Defendant then posted DeSouza's e-mail address and encouraged his viewers/followers to "trash" DeSouza.

53.     In the comments to that poll, Defendant again accuses DeSouza of inflating his fees in the Dugar Lawsuit:

> **@Charlesperalo** ✓  9 days ago
>
> Courts don't normally do that, but this particular case is loser pays.
>
> He also wouldn't charge his client $193,000 if he lost.
>
> His goal is inflate numbers so the loser pays big.
> Show less

54.     The foregoing poll garnered 177,000 votes to date and has more than 547 comments posted, many of which were led by Defendant to believe that Plaintiffs charged their client in the Dugar Lawsuit $193,000.00 in fees, that Plaintiffs conspired with their client to lure Dr. Dugar into using he photograph, or that Plaintiffs somehow grossly inflated their fees in the Dugar Lawsuit (even though such fees were challenged, reviewed, and found to be 100% reasonable).

55.     Between his TikTok and YouTube versions of the Video, there are over 250 comments – many of which believe Defendant's assertions, refer to Plaintiffs as scammers,

threaten physical violence against Plaintiffs, threaten that Plaintiffs should be disbarred, etc.

56.     Other comments, however, warned Defendant that his conduct was likely to get Defendant sued for defamation and/or copyright infringement.

57.     Perhaps in response to those warnings, Defendant once again re-engaged by sending multiple e-mails to DeSouza in which he boasts about his online following, threatens to have DeSouza disbarred, and asserts that Plaintiffs lied about incurring hundreds of hours of fees for a 3-day trial in the Dugar Lawsuit.

58.     Defendant continued sending such e-mails, several of which are extortionate in nature, for the express purpose of discouraging Plaintiffs and their client from pursuing claims against him.

59.     Upon information and belief, Defendant likewise privately communicated with many of his followers/subscribers and further conveyed the same representations – that Plaintiffs are scammers, that they grossly inflated their billing on the Dugar Lawsuit, that the Dugar Lawsuit took place over a 3-day period and therefore it was impossible to bill hundreds of hours of fees, that DeSouza is a scammer, that Plaintiffs conspired with their clients to cause businesses/persons to commit copyright infringement, etc. – all of which is false and which Defendant knew was false at the time he made these statements.

60.     Defendant publicly and privately encouraged his followers/subscribers to contact Plaintiffs and harass them in the same manner as Defendant.

61.     Many of Defendant's followers/subscribers followed his directive and either e-mailed Plaintiffs or submitted messages through the contact form on CopyCat Legal's website – the bulk of which parroted Defendant's lies and threats.

62.     For example, several of Defendant's followers/subscribers messaged Plaintiffs as

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

follows:

**Tell us what happened**

Your organization chokes on it's greed, and shall drown in it's own semen and blood, begging to be let free. The number I gave is fake. Your company may as well jump in a pit of fire with all the other greedy corporates.

**Comment or Message**

DANIEL DESOUZA A BITCH FOR STEALING THAT DOCTOR MONEY

**Tell us what happened**

I heard you are scamming people and that fuckhead Daniel DeSouza needs to have his license revoked and should be imprisoned

| | |
|---|---|
| **From:** | karl |
| **To:** | Daniel DeSouza |
| **Date:** | Thursday, March 19, 2026 12:12:42 PM |

Yooooo is that big Scamming Dan
Charging 200k legal fees for 10k payout
Scamming lil wank aren't ya
Now suing Charles peralo for callin u out haha
We all hope you end up alone and run outta toilet paper while taking a big fat sh!t hahaha

| | |
|---|---|
| **From:** | Isaiah Simmons |
| **To:** | Daniel DeSouza |
| **Subject:** | Your workstyle |
| **Date:** | Friday, March 20, 2026 1:55:29 AM |

Hi! I actually just heard about you and I wanted to tell you something. It takes a different kind of scumbag to charge nearly 20x settlement for people you supposedly "win" cases for, if the alternative is getting screwed out of WAY more money then they'd be better off hoping they have a good public defender. I mean, I know lawyers get dogged on for being soulless monsters who value money over all else but you're seriously trying to make that a reality? Where is your ethics? Why say you'll only charge if you win and then charge more than the settlement for the injured party? Do you truly lack a soul or has greed corrupted and consumed it, leaving only a husk of a person who values money over all else?

13



**Alec T**
1 review

★☆☆☆☆ a day ago  NEW

Terrible experience! The firm asked me if I wanted to work with them in taking photos and placing them online so I can get a settlement from small businesses. I said no but they were really pushy, made me uncomfortable especially when Dan DeSouza tried to touch me inappropriately.

**From** Chase Yancey <chaseyancey@gmail.com>
**Date** Thu 3/26/2026 9:16 PM
**To** Daniel DeSouza <dan@copycatlegal.com>

You are an absolute fucking piece of shit. Who the fuck wins his client $10,000 only to charge them $193,000?!! Absolute fraud.
Yours truly,
Chase Yancey

63. The above are not the only examples of Defendant lashing out against Plaintiffs with false, misleading, and defamatory statements, all maliciously designed to steer attention away from his own copyright infringement and to discourage Plaintiffs' client from pursuing an infringement lawsuit against him.

64. Defendant has made a multitude of false, disparaging statements about Plaintiffs to a multitude of third parties.

## ARGUMENT

### I.   Applicable Legal Standards

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred

14

from contesting on appeal the facts thus established." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. See U.S. v. Kahn, 164 F. App'x 855, 858 (11th Cir. 2006) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206) (5th Cir. 1975); Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Nishimatsu, 515 F.2d at 1206. An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); Tara Productions, Inc. v. Hollywood Gadgets, Inc., 449 F. App'x 908, 911-12 (11th Cir. 2011).

II.     **Plaintiffs are Entitled to Judgment of Liability on Each of Their Claims[3]**

A.     *Defamation/Business Disparagement (Count One)*

Under Florida law, the elements of defamation are: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning

---

[3]     "When a plaintiff demands a jury trial, the defendant is entitled to a jury trial on unliquidated damages, regardless of whether default judgment has been entered against the defendant." Loos v. Club Paris, LLC, 684 F.Supp.2d 1328, 1336 (M.D. Fla. 2010) (citations omitted) (noting that a demand for a jury trial may not be withdrawn without the consent of the parties); see also Griffin v. Swim-Tech Corp., 722 F.2d 677, 679 (11th Cir. 1984) (noting that the trial court awarded a default judgment on the issue of liability and held a jury trial on damages). Because the First Amended Complaint contains a jury demand and Plaintiffs' damages are unliquidated, a default judgment of liability on Plaintiffs' claims (without an award of specific damages) is proper.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008)). Put another way, "defamation is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." Bongino v. Daily Beast Co., LLC, 477 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020) (quotation marks omitted). "Words are defamatory under Florida law when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace;" "to injure one in one's business or profession;" or "to deter third persons from associating or dealing with him." Johnston v. Borders, 36 F.4th 1254, 1285 (11th Cir. 2022) (quotation marks omitted). "Even if the words are not literally false, they may still be defamatory if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." Id. at 1275 (quotation marks omitted).

Florida law also recognizes a cause of action for defamation *per se* where the defamatory statement imputes "conduct, characteristics, or a condition incompatible with the proper exercise of [the plaintiff's] lawful business, trade, profession, or office." Klayman v. Jud. Watch, Inc., 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015). "To injure one in his trade or profession, the statement must, without innuendo, strike at professional competence and fitness to engage in a given profession." San Juan Prods. v. River Pools & Spas, Inc., No. 8:21-cv-2469-TPB-JSS, 2023 U.S. Dist. LEXIS 25030, at *23 (M.D. Fla. Feb. 14, 2023) (internal quotation marks omitted). "The false statement must do more than merely harm the person or entity in its trade or business — the statements must impute fraud, want of integrity, or actual misconduct." Id.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Here, in denying Defendant's Motion to Dismiss, the Court already recognized that the First Amended Complaint properly states a defamation claim.  See D.E. 13, at pp. 5 – 7.  For the reasons stated in that Order and in Plaintiffs' Memorandum in Opposition to Motion to Dismiss [D.E. 12] (which Plaintiffs incorporate as if fully stated herein), Plaintiffs are entitled to a judgment of liability on their defamation/business disparagement claim.

### B. Deceptive and Unfair Trade Practices Act (Count Two)

Count Two of the First Amended Complaint asserts a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  The elements of a FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).  Importantly, "defamatory statements can be a deceptive act or unfair practice."  Abacus Glob. Mgmt. v. Coventry First LLC, No. 6:25-cv-1401-RBD-RMN, 2026 U.S. Dist. LEXIS 141307, at *13 (M.D. Fla. June 25, 2026).

Here, the First Amended Complaint plainly alleges a deceptive act or unfair practice.  For example, despite DeSouza fully explaining the background and fee award in the Dugar Lawsuit (and sending a copy of such to Peralo to read for himself), Defendant deliberately misrepresented/twisted the background/outcome to suggest that Plaintiffs only worked a few days on the case and thus 'scammed' Dr. Dugar out of $193,000.00 in fees.[4]  He likewise accuses DeSouza of marking up fees, conspiring with photographers to 'bait' internet users into copying photographs online, and various other misconduct – all in furtherance of Defendant's for-profit content creation on TikTok, YouTube, etc. (as he gets paid based on the number of views/engagement on his posts/videos).  Such conduct absolutely qualifies as a deceptive/unfair

---

[4]     See First Amended Complaint, at ¶¶ 33 – 41.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

business practice that caused damage to Plaintiffs.  As such, Plaintiffs are likewise entitled to a judgment of liability on this claim.

### C.        *Unauthorized Publication of Name or Likeness (Count Three)*

Fla. Stat. § 540.08 provides that: "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by… Such person."  Fla. Stat. § 540.08(2) provides a private right of action to any person whose likeness is so used to enjoin the unauthorized publication and to recover damages for any loss or injury sustained by reason thereof.

Here, the First Amended Complaint details Defendant's unauthorized publication of several photographs of DeSouza and various employees of CopyCat Legal without the express written or oral consent of any such parties.  Such publication was unequivocally commercial (i.e., to generate views for Defendant's videos which, in turn, translate to monies being paid to him as part of his content creation business).  Defendant likewise boasted to DeSouza that he was "making a Scamming Dan shirt I intend on selling to my audience" which would include at least one photograph of DeSouza.  These allegations entitle Plaintiffs to a judgment with respect to Defendant's violation of Fla. Stat. § 540.08.

## III.    Plaintiffs are Entitled to Their Reasonable Attorneys' Fees

Pursuant to Fla. Stat. § 501.2105, the Court should find that Plaintiffs are entitled to recover their reasonable attorneys' fees incurred in this action against Defendant.  Given Defendants' conduct (both leading up to and throughout this lawsuit), a fee award is appropriate.  Plaintiffs request that the Court find entitlement to fees, subject to a timely-filed motion (after entry of a monetary judgment following trial on damages) to determine the amount of fees to be awarded.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (a) granting this Motion; (b) entering final default judgment as to liability only against Defendant as set forth herein; (c) enjoining Defendant from any unauthorized display or publication of DeSouza's or any other CopyCat Legal employee's photograph or likeness; (d) requiring Defendant to remove from display or publication any photograph of DeSouza or other CopyCat Legal employee that Defendant posted without written authorization of such person; (d) determining that Plaintiffs are entitled to an award of reasonable attorneys' fees subject to a timely-filed motion to determine the amount of such fees; and (e) for such further relief as the Court deems proper.  A proposed Order is filed herewith.

Dated: July 20, 2026.

COPYCAT LEGAL PLLC
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
dan@copycatlegal.com

By: /s/ Daniel DeSouza
　　　Daniel DeSouza, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that on July 20, 2026, the foregoing document was served via email to Charles A. Peralo (charles@peralo.com).

/s/ Daniel DeSouza
Daniel DeSouza, Esq.

19