UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 0:26-cv-60910-DSL

COPYCAT LEGAL PLLC and
DANIEL DESOUZA,

    Plaintiffs,

v.

CHARLES A. PERALO,

    Defendant.



FILED BY _____ D.C.

AUG 07 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

---

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Defendant Charles A. Peralo ("Defendant" or "Peralo"), respectfully submits this Opposition to the Motion for Default Judgment (ECF No. 32, "Motion" or "Mot.") filed by Plaintiffs CopyCat Legal PLLC ("CopyCat Legal") and Daniel DeSouza ("DeSouza") (collectively, "Plaintiffs"). Plaintiffs' Motion was filed July 20, 2026, and served by mail on Peralo. ECF No. 34. Delivery of the Motion occurred on July 23, 2026. ECF No. 34. Under Federal Rule of Civil Procedure 6(d), the deadline for this Opposition is August 6, 2026. As set forth herein, Plaintiffs' Motion should be denied because the Court lacks subject matter jurisdiction and because Peralo's videos and online speech is not defamation, not a deceptive and unfair trade practice, and not an *un*authorized use of Plaintiff DeSouza's name and likeness. Moreover, Plaintiff's filing of this action violates Florida anti-SLAPP statute, § 768.295, Fla. Sta.; it is a meritless response to Peralo's free speech in connection with public issues.

*First*, Plaintiffs' Motion violates the Court's Order on Final Default Judgment Procedure (ECF No. 31); the Motion addresses liability only, *see* Mot. at 1, whereas the Court's Order required Plaintiffs to file a motion that addressed any sum certain and provide supporting documentation for damages, ECF No. 31 at 1 ("The *motion for default judgment* must include

1

affidavits of any sum certain due by Defendant and any other supporting documentation necessary to determine Plaintiffs' measure of damages.") (emphasis in original).  It is understandable that Plaintiffs chose to ignore the Court's requirement to *factually articulate* the amount in controversy—they cannot.

There is no allegation in the Amended Complaint or Motion for Default Judgment that *plausibly* establishes facts to establish this Court's subject matter jurisdiction.  There is no federal question in this case.  And while the parties are diverse, there is nothing more than conclusory and speculative assertions that damages exceed $75,000.  Plaintiffs' allegations are legally insufficient to establish diversity jurisdiction and, in filing the Motion, Plaintiffs failed to present any evidence or argument to support an amount in controversy greater than $75,000.  Additionally, the only allegations that allude to the *potential* for damages are based on privileged attorney-client communications.  It appears unlikely that Plaintiffs obtained the consent of those former clients to disclose that confidential information, accounting for why those former clients are not identified and no specifics about the alleged damage are provided.  There is no factual allegation of *monetary* damage; only Plaintiffs' emotion damage due to their belief that mean words were said about them.  But any *objective* view[1] of Peralo's videos and public comments establish that his statements were either opinions—with an explanation of what those opinions were based on—or are otherwise true statements about Plaintiffs.

*Second*, on the merits Plaintiff's Motion is due to be denied—this is a meritless SLAPP lawsuit.  The allegations confirm that Plaintiffs filed this action specifically to punish Peralo for exercising his first amendment right of free speech in connection with public issues.  The Florida legislature specially amended the state anti-SLAPP statute, § 768.295, Fla. Sta., to provide defendants like Peralo the right to be free from lawsuits like this one.  *See, e.g.*, § 768.295(3), Fla. Sta. ("A person or governmental entity in this state may not file or cause to be filed . . . any lawsuit,

---

[1] The conduct of Plaintiff DeSouza and Plaintiff CopyCat Legal through its counsel—Plaintiff DeSouza, who is apparently the only member of CopyCat Legal—reflect that Plaintiffs have not objectively assessed this case or the decision to file it.

cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s.5, Art. 1 of the State Constitution."). In filing this action, Plaintiffs violated that statute.

Under Florida's anti-SLAPP statute, not only should Plaintiffs' Motion be denied, but Peralo "has a right to an expeditious resolution" of his claim that this suit was brought in violation of § 768.295 of the Florida Statutes. Because a Clerk's Default was entered against Peralo (ECF No. 21), before Peralo can affirmatively move for that relief, the Default must be set aside, as requested in Peralo's pending motion (ECF No. 37). Peralo will separately move for the Court to accept his untimely answer and affirmative defenses to the Amended Complaint. Peralo will then move for an expeditious resolution of this action.

## STATEMENT OF THE CASE AND FACTUAL ALLEGATIONS

Plaintiffs' allegations in this action work hard to keep the Court viewing only the Plaintiffs' *characterizations* about Peralo's statements, rather than viewing the statements themselves. *Plaintiffs state* that Peralo made statements in online videos—without providing those videos for the Court to view Peralo's videos. Rather than accept Plaintiffs' editing of Peralo's videos, the videos themselves should be viewed and considered in their entirety.

Peralo is a social media content creator where he makes produces and posts videos in connection with public issues. *See* ECF No. 32-1, Declaration of Daniel DeSouza ("DeSouza Dec.") at ¶¶ 11–12 (citing Peralo's social media posting cites containing his audiovisual works in connection with public issues). On March 17, 2026, Plaintiffs sent Peralo a letter alleging that Peralo was infringing copyrights in photographic works while demanding an extortionate amount of money as a "settlement" of those claims. *See id.* at ¶ 17; *see also* Exhibit "A" (letter from Plaintiffs, dated March 17, 2026). Following receipt of that letter, Peralo investigated Plaintiffs and created a video addressing both what Peralo learned about Plaintiffs' conduct as copyright lawyers and Peralo's suspicions about Plaintiffs' conduct. *See id.* at p.7 (Mar. 18, 2026 email with

3

link to a TikTok video); *see also* https://www.tiktok.com/t/ZP8twwLkS/ (the "First Video", last visited Aug. 4, 2026). The First Video, titled "This guy is 'suing' me," was posted on March 18, 2026. DeSouza Dec. ¶ 23. The First Video speaks for itself, documenting Peralo's experience with Plaintiffs DeSouza and CopyCat Legal. *See* https://www.tiktok.com/t/ZP8twwLkS/.

Like Peralo's other journalistic videos, the First Video addresses certain facts that Peralo either directly experienced or facts that Peralo researched when looking into Plaintiffs. *See id.* The First Video also addresses Peralo's research into an unsavory area of the law that is documented as occurring with certain types of copyright plaintiffs and Peralo's questions about the ethical practices of Plaintffs. *See id.* The First Video also offers Peralo's opinions about Planitiffs. *See id.*

Plaintiffs allege that as a result of watching the First Video an unspecified "Florida attorney" who Plaintiff DeSouza has represented in the past decided not to hire Plaintiff DeSouza in connection with a malicious prosecution lawsuit in this District. DeSouza Dec. ¶¶ 42–44. Though Plaintiffs rely on the this supposed attorney-client communication from the "Florida attorney," Plaintiffs do not identify that "Florida attorney," the lawsuit itself, or whether the "Florida attorney" intended to hire Plaintiff DeSouza through co-Plaintiff CopyCat Legal or through DeSouza's other law firm, DeSouza Law, P.A. *See id.*; *see also id.* at ¶ 9 (DeSousa Legal was formed in 2014 and CopyCat Legal was formed in 2019). Plaintiff DeSouza's declaration was submitted on the letterhead of DeSouza Law, P.A. *See generally* DeSouza Dec. (at bottom of each page). Plaintiff do not identify what statement or statements in the First Video was the supposed reason for the "Florida attorney" to decide he would rather be hired by separate counsel.

Plaintiffs also allege that "one of CopyCat Legal's clients" also emailed Plaintiff DeSouza, "deeply concerned by the content of" the First Video and believing that continued representation by CopyCat Legal could reflect poorly upon her. *Id.* at ¶ 45. Again, Plaintiffs do not identify this former client, despite relying on attorney-client communications as the basis for the allegation. *See id.* Plaintiffs also do not identify if any lawsuits have been filed on behalf of that former client between the time of the alleged communication and the filing of this action. Again, Plaintiff do

4

not identify what statement or statements in the First Video was the supposed reason for the former CopyCat Legal client to decide that continued representation by Plaintiffs could reflect poorly on her own reputation.

Peralo's factual statements about Plaintiffs DeSouza and CopyCat Legal are confirmed by public records and his opinions about Plaintiffs DeSouza and CopyCat Legal are explained in his videos and are logically based on true information about Plaintiffs, as well as the documented practices of other "copyright trolls."

After creating the First Video, Peralo created a poll on YouTube, under the heading "A lawyer named Daniel DeSouza sued a doctor over a copyright image on a website and won his client $10,000. He charged $193,000 though for legal bill he made the doctor pay. Is this lawyer a scammer?" *See* https://www.youtube.com/post/UgkxyNNprqLIy-gFhu131_JXcNGTOPeWfAA6 (last visited Aug. 4, 2026). While Plaintiffs allege that Peralo "encouraged his viewers/followers to 'trash'" DeSouza, there is no identification of where such encouragement occurred. *See, e.g.*, DeSouza Dec. at ¶¶ 49, 56–58. Unlike the myriad screenshots of immaterial and impertinent private emails Plaintiffs insist on including, no such screenshot of the "encouragement" is included.

Not addressed in Plaintiff's Motion, but raised in the Amended Complaint, on April 21, 2026, Peralo made a second video (the "Second Video") titled "This guy is trying to sue me again and it gets worse," which Peralo published on TikTok. ECF No. 6 (Am. Compl.) at ¶ 67; *see also* https://www.tiktok.com/@charlesperalo/video/7631274899478203679?_r=1&_t=ZP-98V917WfBM6 (last visited Aug. 4, 2026). In both the First Video and the Second Video, Peralo discusses and discloses information that he learned from his own investigative research into Plaintiffs DeSouza and CopyCat Legal, including information provided by former defendants sued by Plaintiffs and information provided to Peralo from a former client of Plaintiffs named Scott Serio. *See, e.g.*, DeSouza Decl. at ¶¶ 30–40 (allegations about the First Video's discussion of the "Duggar lawsuit"); Am. Compl. at ¶¶ 69–78 (allegations about the Second Video's discussion of the "Sports Mall lawsuit"); https://www.tiktok.com/t/ZP8twwLkS/ (First Video);

5

https://www.tiktok.com/@charlesperalo/video/7631274899478203679?_r=1&_t=ZP-98V917WfBM6 (Second Video).

Peralo's investigative videos, shining a light on Plaintiffs' misconduct, are not unique. Plaintiffs' misconduct has been identified or otherwise discussed in court filings, court orders, and on other websites. In connection with the action *Affordable Aerial Photography, Inc. v. DiTommaso*, Case No. 9:22-cv-80030-DMM, (S.D. Fla.) ("*DiTommaso*"), the Court's November 9, 2023 Order Granting Motion for Relief from Default Judgement addressed potential misconduct by Plaintiff DeSouza and Plaintiff CopyCat Legal. *Id.*, 2023 WL 11796994, at *4. In vacating the default judgment, more than seventeen (17) months after it was entered, the Court explained:

> **It is therefore possible**, given Re/MAX's response to Plaintiff's initial Demand Letter, Mr. DiTomasso's statements that he has never controlled the Realtor.com public page, and that at all relevant times Mr. DiTomasso was an employee of Re/MAX, **that no valid claim against Mr. DiTomasso ever existed. It is further possible, that Plaintiff's counsel knew this while pursuing default judgment** against Mr. DiTomasso. **While Plaintiff's choice to bring this claim against Mr. DiTomasso and exclude the factual context pertaining to Re/MAX may not have risen to the level of fraud on the court, it was conduct unbecoming a forthright litigant in federal court and the omission borders on deceitful.**

*Id.* (emphasis added). The underlying briefing provides further context for that order.

Public research into Plaintiffs CopyCat Legal and DeSouza reveals multiple articles and postings addressing the potential misconduct by Plaintiffs and/or discusses Plaintiffs as "copyright trolls" while explaining common tactics by such companies to mislead recipients of copyright demand letters—and even Courts—in order to improperly inflate "settlements" or awards. In a September 2, 2025, post by McNees Wallace & Nurick, Plaintiff CopyCat Legal is discussed as a copyright enforcement company (along with Higbee & Associates and PicRights), "sometimes being referred to as *copyright trolls*." *See* https://www.mcneeslaw.com/copyright-troll-demand-letters/ (last visited Aug. 4, 2026). That article also explains that such companies sometimes send demand letters even over "images that were properly licensed," and that such demands "are often inflated." *Id.* In a December 9, 2025, post by Fidara Legal, Plaintiff CopyCat Legal is addressed with other copyright troll law firms, including a discussion that such firms send letters on claims

6

that are "not legitimate." *See* https://www.fidaralegal.com/copyright-trolls-what-they-are-and-how-to-handle-a-demand-letter-from-copytrack-copycat-or-similar-companies/ (last visited Aug. 4, 2026). That article highlights conduct that could easily be considered fraudulent or a "scam":

> Many copyright troll claims rely on vague or misleading information. You may receive multiple follow-ups demanding payment without clear evidence of infringement. Sometimes, the sender doesn't even own the image they claim to represent. Other times the copyright is not even registered, which limits enforcement rights.
>
> If the company refuses to provide documentation or threatens extreme legal consequences for minor infractions, that's a red flag. In those cases, you may not owe anything, and responding strategically (not emotionally) is key.
>
> Avoid these mistakes:
>
> - Don't immediately pay without confirming the facts.
> - Don't admit wrongdoing or send a detailed explanation before reviewing the claim.
> - Don't ignore the letter entirely. It's better to acknowledge receipt and investigate than to go silent.

*Id.* CopyCat Legal leans into these types of allegations providing a dedicated page on its website with a tongue-in-cheek article that can only be assumed to be a permanent response to a frequently asked question: "Is CopyCat Legal a Copyright Troll?" *See* https://www.copycatlegal.com/blog/is-copycat-legal-a-copyright-troll/ (last visited Aug. 4, 2026).

Plaintiffs' conduct is addressed online in a January 30, 2023, article posted by Paul Levy on the Consumer Law & Policy Blog by the Public Citizen Litigation Group, titled "New trolls on the block: Prepared Food Photos and Daniel DeSouza / CopyCat Legal." *See* https://clpblog.citizen.org/new-trolls-on-the-block-prepared-food-photos-and-daniel-desouza-copycat-legal/ (last visited Aug. 4, 2026). A second Levy article, titled "Resistance to Extortionate Copyright Infringement Claims by Prepared Food Photos," expands upon Plaintiffs' conduct on behalf of their client Prepared Food Photos. *See* https://clpblog.citizen.org/resistance-to-extortionate-copyright-infringement-claims-by-prepared-food-photos/ (last visited Aug. 4, 2026). In a third article, Levy directly questioned whether Plaintiffs DeSouza and CopyCat are running "scam" on behalf of their client, in an article titled "Is Prepared Food Photos Running a Scam, Not

Just a Scheme to Extract Excessive Rents?" *See* https://clpblog.citizen.org/is-prepared-food-photos-running-a-scam-not-just-a-scheme-to-extract-excessive-rents/ (last visited Aug. 4, 2026).

Paul Levy writes from experience litigating against Plaintiffs DeSouza and CopyCat Legal. Representing the defendant (Pool World) in a case filed by Plaintiffs DeSouza and CopyCat Legal on behalf of Prepared Food Photos, Levy uncovered that the monetary damage representations by Plaintiffs on behalf of Prepared Food Photos "was an outright lie." *See* https://clpblog.citizen.org/prepared-food-photos-finally-pays-for-its-misconduct/ (last visited Aug. 4, 2026). Levy explained that the undisputed facts established that Prepared Food Photos—represented by Plaintiffs—obtained its income "by lying in demand letters and court filings about its subscription policies," and that it "used deliberately deceptive and coercive statements intended to intimidate the recipients of its demand letters and lawsuits into paying excessive settlements in excess of the damages that Prepared Food Photos could reasonably expect to recover in contested litigation with knowledgeable counsel on the defense side." *Id.* Levy's article resulted in a second article on the website Tech Dirt, discussing the results of Levy's litigation. *See* https://www.techdirt.com/2025/09/19/copyright-troll-backfires-has-to-pay-up-to-get-out-of-its-lawsuit-of-lies/ (last visited Aug. 4, 2026).

On August 5, 2026, Levy filed an amicus brief on behalf of Pool World and the Nation Law Forum d/b/a National Law Review in the ongoing appeal in *Prepared Food Photos Inc. v. Jaber*, No. 26-1757, Dkt. 22 (CA7). The amicus brief highlights **serious** ethical issues by Plaintiffs. Specifically, the brief presents, and supports, that Plaintiff DeSouza knowingly elicited false testimony during the trial in the *Jaber* case and that he filed post-trial motions based on arguments that Plaintiff DeSouza knew were false. *Id.*, Dtk. 22 at 9–12 (ECF pages 16–19) (https://storage.courtlistener.com/recap/gov.uscourts.ca7.56394/gov.uscourts.ca7.56394.22.0.pdf ). As explained in that brief:

> The Court can take notice from these judicial records of the fact that PFP and its counsel were repeatedly warned that Pool World had discovered lower subscription fees long before Rebecca Jones testified at the trial in this case on October 28, 2024 that PFP's [monthly] charge was $999 or higher. Yet, despite this knowledge, PFP's

counsel deliberately elicited trial testimony from Rebecca Jones that PFP charged a minimum monthly fee of $999 or roughly $1000. Trial Transcript at 64-65, 89, 90. PFP then argued in its November 20, 2024 motion for a new trial, DN 56, and again in its December 18, 2024 reply brief on that motion, that the jury's verdict should be set aside in favor of an actual damages award of $23,976, resting on default judgments PFP had obtained **based on evidence that, at the time those briefs were filed, PFP and its counsel knew was false. On remand, the trial court might well explore the possible consequences of this false testimony elicited by counsel who knew it was false.**

*Id.* at 12 (ECF p.19) (emphasis added).

## ARGUMENTS

I.    **The Court Should Deny Plaintiffs' Motion for Default Judgment.**

A.    **Plaintiffs Have Failed to Establish an Amount in Controversy Exceeding $75,000 and, Therefore, This Court Lacks Subject Matter Jurisdiction.**

Plaintiffs' Motion *completely* fails to address, much less establish, that this Court has subject matter jurisdiction. That is because Plaintiffs cannot. While Plaintiffs feelings are clearly hurt by Defendant's videos—videos that *accurately* and *correctly* described Plaintiffs' conduct, as well as Peralo's *opinions* about that conduct—Plaintiffs' hurt feelings does not provide this Court with jurisdiction over these claims. While the parties may be diverse, subject matter jurisdiction is lacking because the amount in controversy (to the extent that there is *any* amount in controversy) does not exceed $75,000. Without establishing that element, Plaintiff's Motion must be denied and this action must be dismissed.

"[W]hen the plaintiff pleads an unspecified amount of damages, it bears the burden of proving by a preponderance of the evidence that the claim on which jurisdiction is based exceeds the jurisdictional minimum." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018). "This additional requirement is warranted because there is simply no estimate of damages to which a court may defer." *Id.* "An amount in controversy is indeterminate when, for example, no effort has been made to quantify damages and a party makes only a conclusory statement that the damages exceed $75,000." *Dohmen v. Short's Travel Management, Inc.*, Case No. 23-23057-Civ-Scola, 2023 WL 9117266, at *1 (S.D. Fla. Dec. 18, 2023) (citing *Doane v. Tele Cir. Network Corp.*, 852 Fed. Appx. 404, 407 (11th Cir. 2021)).

9

Plaintiffs' Motion intentionally disregards the Court Order on Final Default Judgment Procedure [ECF No. 31], which specifically required Plaintiffs to provide "affidavits of any sum certain due by Defendant and any other supporting documentation necessary to determine Plaintiffs' measure of damages." *Id.* at 1. Disregarding that Order, Plaintiffs filed their Motion addressing liability only, *see* Mot. at 15, arguing that because "Plaintiffs' damages are unliquidated, a default judgment of liability on Plaintiffs' claims (without an award of specific damages) is proper," *id.* at 15 n.3. Plaintiff is wrong. Indeed, by conceding that the damages are "unliquidated," Plaintiff was obligated to provide evidence to support damages. *See Fastcase*, 907 F.3d at 1342. If Plaintiff does not establish an amount in controversy greater than $75,000— which it has not done—Plaintiffs' case must be dismissed.

The Amended Complaint fares no better; it only alleges conclusory damages "greater than $75,000" and speculates as to possible lost fees based on unidentified former clients in unidentified cases. *See, e.g.*, Am. Compl. ¶¶ 103, 108, 115. Those allegations are legally "insufficient to sustain jurisdiction" once challenged. *See Morrison v. Allstate Indemn. Co.*, 228 F.3d 1255, 1272 n.17 (11th Cir. 2020). "[W]here jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *accord Marks v. Bank of Am.*, Case No. 24-cv-60543-Damian/Valle, 2024 WL 5485761, at *3 (S.D. Fla. Sept. 202, 2024) (citing same). Speculation as to the amount of damage is likewise insufficient. *See, e.g.*, *Bradley v. Kelly Servs., Inc.*, 224 Fed. Appx. 893, 895 (11th Cir. 2007) (*pro se* employee's speculation that her breach of contract, fraud, and negligent supervision of employees claims exceeded $75,000 in damages did not satisfy her burden of providing beyond a preponderance of the evidence that the claims exceeded the amount in controversy requirement where plaintiff did not present any calculations as to how she determined the amount of loss); *Barker v. Capital One, N.A.*, 801 F. Supp. 3d 1327, 1332 (S.D.

Fla. 2025) (collecting cases for the proposition that "[c]ourts have dismissed actions where plaintiffs only made general allegations that they suffered damages.")

Plaintiffs bore the burden of providing *facts* to quantify a measure of damage greater than $75,000. They failed to do so in the Amended Complaint and intentionally avoided doing so in the Motion. As such, the Court cannot exercise subject matter jurisdiction over this action and cannot grant default judgment for the Plaintiffs.

**B.      This Action Was Filed in Violation of Florida's Anti-SLAPP Statute and, Therefore, the Motion Should Be Denied and The Action Should Be Promptly Dismissed.**

Separately, Plaintiffs' Motion should be denied and the action should be dismissed because Plaintiffs filed this case in violation of Florida anti-SLAPP statute, § 768.295, Fla. Stat. "A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." *Id.*, § 768.295(3). Peralo's First and Second Videos are indisputably "free speech in connection with public issues." *See id.*, § 768.295(2)(a) ("'Free speech in connection with public issues' means any written or oral statement that is protected under applicable law and . . . is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."). Peralo's investigative and informative videos about Plaintiffs are no different than other news reporting—he identified and publicly disclosed serious issues with the way Plaintiffs engage in their enforcement of copyrights on behalf of their clients.

Further, reviewing the videos—rather than Plaintiffs' mischaracterizations of those videos—illuminates that Plaintiffs claims are meritless and were filed primarily because Peralo "exercised the constitutional right of free speech in connection with a public issue," as protected by the First Amendment to the U.S. Constitution, s. 5, Art. I to the Florida Constitution, and

11

§ 768.295(3), Fla. Stat. This action is meritless. First, the Court lacks subject matter jurisdiction. *See supra*, § I(A). Thus, Plaintiffs' decision to file it in federal court was designed only to financially punish Peralo and force him to expend resources to obtain counsel.[2] The action is also meritless when the relevant claims are analyzed against the *actual videos*, rather than Plaintiffs' mischaracterizations of them. *See infra*, §§ I(C)–(E).

### C.   The Allegations and Evidence Fail to Establish Actionable Defamation or Business Disparagement.

Plaintiffs' Motion does not identify any claim for defamation. *See* Mot. at 15–17. Instead, Plaintiffs attempts to wholesale incorporate a previous memorandum of law into their nineteen (19) page Motion. *See id.* at 17. Permitting such bodily incorporation would cause Plaintiffs' Motion to far exceed the permitted number of pages for the Motion. Moreover, that memorandum of law argued *against dismissal*, and did not articulate defamatory and false statements by Peralo. Rather, Plaintiffs' prior memorandum merely recites that they *alleged* that Plaintiffs' statement were defamatory. *See* ECF No. 12 at 7. The memorandum did not identify or argue which statements were the basis of the claim and how those statements met the elements required to establish defamation. *See id.* Further, Plaintiffs argued that the allegations (and memorandum) did not need to plead falsity with specificity. *See id.* at 8. Moreover,

"To prove defamation under Florida law, a plaintiff must establish the following elements: '(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.'" *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008)). "Words are defamatory under Florida law when 'they tend to subject one to hatred,

---

[2] This is further reflected in Plaintiffs' opposition to Peralo's request for referral to the volunteer attorney program. *See* ECF No. 41. Apparently, Plaintiffs believe that only *they* should have access to legal training—despite technically representing themselves—and that Peralo should have to suffer due to his lack of knowledge of the legal process, rather than due to any merit in the case.

distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession.'" *Id.* (quoting *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d Dist. Ct. App. 2007). "Even if the words are not literally false, they may still be defamatory if 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'" *Id.* (quoting *Jews for Jesus*, 997 So. 2d at 1108).

"In determining whether language is defamatory under Florida law, '[t]he publication made should be construed as the common mind would understand it,' and not 'in their mildest or most grievous sense.'" *Id.* (quoting *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla. 1953)). "The publication must also be 'considered in its totality' and in context rather than piecemeal and in isolation." *Id.* (citing B*yrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th Dist. Ct. App. 1983); *Jews for Jesus*, 997 So. 2d at 1107). "Where a statement is subject to two possible interpretations and one is defamatory, it is for the jury to decide whether the statement is in fact defamatory." *Id.* (citing *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1463 (11th Cir. 1984)).

Plaintiffs have avoided addressing Peralo's statements "in their totality," opting instead to address them piecemeal and in isolation. That is legally improper. *See Johnston*, 36 F.4th at 1275. Plaintiffs did not produce the videos, or other alleged online posts, as exhibits to the Amended Complaint or the Motion; Plaintiffs did not provide links for those videos or other alleged online posts, depriving the Court of the ability to properly consider Peralo's statements "in [their] totality and in context rather than piecemeal and in isolation." *See id.* But while Plaintiffs actively avoid the Court's review of the context, Peralo welcomes it and has provided links to the videos and poll. Moreover, Plaintiffs have specifically avoided articulating the specific statements believed to be both false and defamatory. Instead, the Motion—even incorporating the prior memorandum—and Amended Complaint simply try to address Peralo's *conduct* in the aggregate, including conduct that is immaterial to the merits (of lack thereof) of Plaintiffs' claims.

As reflected in each video, any statement of fact by Peralo was made based on specific research into Plaintiffs and their conduct, including Peralo stating what was told to him by former

targets—and a former client—of Plaintiffs. "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (collecting cases). "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.* (citing *From v. Tallahassee Democrat., Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981)). "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Id.* "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Id.* at 1262–63 (collecting cases). "When making this assessment, a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." *Id.* at 1263. "It is also the court's function to determine 'whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct.'" *Id.* (quoting *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995)).

Peralo's videos conveyed only true statements based on his underlying investigative research into Plaintiffs, and Peralo's opinions about Plaintiffs, opinions that were provided along with the underlying facts that those opinions were based on. *See, e.g.*, First Video (https://www.tiktok.com/t/ZP8twwLkS/); Second Video (https://www.tiktok.com/@charlesperalo/video/7631274899478203679?_r=1&_t=ZP-98V917WfBM6). Moreover, the public record reflects ample evidence to suggest ethical violations, fraud, and "scams" by Plaintiffs DeSouza and CopyCat Legal. *See supra* at 6–9.

Moreover, Plaintiffs are limited public figures in this context and do not establish *actual malice* with respect to any allegedly defamatory statements. "Determining whether Plaintiffs are

14

limited public figures requires a two-part analysis. In the first part, the Court considers two questions: (1) whether Plaintiffs 'have greater access to the media which gives them a more realistic opportunity to counteract false statements than private individuals normally enjoy;' and (2) whether Plaintiffs have 'voluntarily placed themselves in a position and acted in a manner which invited public scrutiny and comment.'" *Gubarev v. BuzzFeed, Inc.*, 354 F. Supp. 3d 1317, 1325 (S.D. Fla. 2018) (quoting *Silverster v. Am. Broad. Companies, Inc.*, 839 F.2d 1491, 1494 (11th Cir. 1988)). "In the second part of the analysis, the Court considers whether the Plaintiffs are limited public figures with respect to the particular public controversy at issue." *Id.* (quoting *Silverster*, 839 F.2d at 1494). "This requires the Court to do three things: '(1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether "the alleged defamation was germane to the plaintiffs' participation in the controversy."'" *Id.* (quoting *Silverster*, 839 F.2d at 1494 (quoting *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980))).

Addressed above, Plaintiffs DeSouza and CopyCat Legal have willingly entered into the public discourse with respect to Plaintiffs' conduct as copyright-infringement counsel—i.e., the specific controversy at issue. *Supra* at 6–9. Moreover, the mere filing of this action reflects Plaintiffs' greater access to media to more realistically counteract any allegedly false statements—though here there were no false statements. Yet Plaintiffs' Motion does not even *attempt* to argue that actual malice exists with respect to Peralo's videos.

Accordingly, Plaintiffs' claims of defamation are meritless. The Motion should be denied.

### D.   The Allegations and Evidence Fail to Establish a Claim for Unfair or Deceptive Trade Practices.

Plaintiffs' Motion (and Amended Complaint) fail to establish a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006), Plaintiffs allege a *consumer* claim under FDUTPA. The three elements of a consumer claim under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th

Cir. 2016). An objective test is used to determine whether an act is deceptive under FDUTPA, and "the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Id.* at 983–84 (quoting *State, Off. of Att'y Gen. v. Com. Com. Leasing*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)). To establish an unfair practice, the plaintiff must show that it is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 489 (Fla. Dist. Ct. App. 2001)). Actual damages under FDUTPA "are measured according to 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Carriuolo*, 823 F.3d at 986 (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). Actual damages are required, because FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mort. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008) (quoting *Rollins*, 951 So. 2d at 873).

As addressed above, Plaintiff have no "actual damages," and the Motion intentionally avoids establishing actual damages. Indeed, the Motion concedes that the damages are not "actual," but rather, that they are "unliquidated," i.e., speculative losses, or are otherwise "subjective feelings of disappointment" based on Peralo's protected speech highlighting misconduct by Plaintiffs in their representations of copyright clients. That is not an actionable claim under FDUTPA. Further, the Motion only conclusorily *asserts* an unfair or deceptive practice, but does not argue or establish a practice that is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR*, 842 So. 2d at 777. *See* First Video (https://www.tiktok.com/t/ZP8twwLkS/) and                                    Second                                    Video (https://www.tiktok.com/@charlesperalo/video/7631274899478203679?_r=1&_t=ZP-98V917WfBM6).

Without establishing an unfair or deceptive *trade practice*, and without establishing *actual damages*, Plaintiffs cannot establish a claim under FDUTPA. Accordingly, Plaintiff's Motion should be denied.

**E.      The Allegations and Evidence Fail to Establish a Claim for the Unauthorized Use of Name or Likeness.**

Plaintiffs' Motion does not present a serious argument for their claim of an unauthorized use of Plaintiffs' name or likeness. *See* Mot. at 18. Florida law is clear: "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or otherwise likeness of any natural person without the express written or oral consent to such use." § 540.08, Fla. Stat. The statute "is designed to prevent the unauthorized use of a name to directly promote the product or service of the publisher." *Loft v. Fuller*, 408 So. 2d 619, 622-23 (Fla. 4th Dist. Ct. App. 1981); *see also Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 806 (Fla. 2005) ("We agree with the reasoning of these decisions and *Loft* that the purpose of section 540.08 is to prevent the use of a person's name or likeness to directly promote a product or service because of the way that the use associates the person's name or personality with something else.").

But the exceptions stated in the statue are equally clear:

> The provisions of this section shall not apply to: (a) The publication, printing, display, or use of the name or likeness of any person in any newspaper, magazine, book, news broadcast or telecast, or other news medium or publication as part **of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes.**

§ 540.08(4), Fla. Stat. (emphasis added).

Plaintiffs' Motion does not address the critical exception to their claim, likely because doing so would completely undermine their claim and reveal that this action is nothing but a meritless attempt to punish Peralo for exercising his first amendment right of free speech in connection with public issues. Viewing the videos shows that no viable claim under § 540.08, Fla. Stat., can exist. *See* First Video (https://www.tiktok.com/t/ZP8twwLkS/) and Second Video

(https://www.tiktok.com/@charlesperalo/video/7631274899478203679?_r=1&_t=ZP-98V917WfBM6).

Accordingly, Plaintiffs' Motion should be denied.

## CONCLUSION

For the reasons above, Defendant respectfully submits that Plaintiff's Motion should be denied and Defendant should be permitted to show that this action was filed without merit and in violation of Peralo's free speech rights under the First Amendment of the U.S. Constitution and § 5, Art. 1 of the Florida Constitution.

Respectfully submitted,

Charles A. Peralo
21 Scarborough Circle
Rock Hill, NY 12775
charles@peralo.com
845-807-6849
Pro se Defendant[3]

---

[3] Though this Opposition was created with the assistance of generous attorneys, Defendant has been unable to engage counsel to appear on his behalf and defend this action. That circumstance has necessitated the pending motion for referral to the District's volunteer attorney program. *See* ECF No. 38. As noted in the Defendant's pending Motion to Set Aside the Clerk's Default [ECF No. 37], additional time is necessary for Peralo to be able engage counsel to defend him in this action. The additional thirty (30) days requested to be able to answer the Amended Complaint are required so as to give the Defendant the ability to pay the retainer that would be required by competent legal counsel.