IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:26-cv-60910-DSL

COPYCAT LEGAL PLLC and DANIEL
DESOUZA,

     Plaintiffs,

v.

CHARLES A. PERALO,

     Defendant.

---

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR DEFAULT FINAL JUDGMENT (LIABILITY ONLY)

Plaintiffs[1] hereby file this reply memorandum in further support of their Motion for Default Final Judgment (Liability Only) (the "Motion") [D.E. 32].

## INTRODUCTION

Following Defendant's refusal to participate in this lawsuit (other than the occasional hurling of obscenities and insults) and willful failure to respond to the First Amended Complaint, Plaintiff filed the Motion. Given the unliquidated nature of Plaintiff's damages, the Motion seeks a default judgment of liability only (with damages to be determined by a jury) on each of Plaintiff's claims.

Defendant's August 7, 2026 Opposition to Plaintiffs' Motion for Default Judgment (the "Opposition Memorandum") [D.E. 44], while apparently now drafted by one or more attorneys,[2]

---

[1]     Terms not defined herein shall have the meaning ascribed to them in the Motion.

[2]     The Opposition Memorandum notes that it "was created with the assistance of generous attorneys," somewhat satisfying the Florida Bar's requirement that papers prepared by an attorney for a pro se litigant and filed with the court must indicate "Prepared with the Assistance of Counsel." See https://www.floridabar.org/etopinions/etopinion-79-7-rec/. The Opposition Memorandum does not identify what attorneys assisted with drafting or whether they are

does not offer a single reason for denial of the Motion.  Defendant seemingly misunderstands that, by virtue of the Clerk's Default entered against him, he is deemed to admit the well-pleaded allegations of the First Amended Complaint – allegations that this Court has already determined support at least Plaintiffs' defamation claim (as Defendant did not actually challenge the other claims in his Motion to Dismiss).  Rather, he argues that the Court lacks subject matter jurisdiction, that this action was filed in violation of Florida's Anti-SLAPP statute, and that Plaintiffs' allegations fail to establish each of their claims (while peppering in several blog articles written by defense attorneys who presumably have their own agendas in attracting new clients and/or other personal motivations).[3]  None of these points have any merit.  The Motion should be granted and Defendant should be precluded from disputing liability.  He may, however, challenge Plaintiff's damages in front of a jury.

## ARGUMENT

### I.      Amount in Controversy

The Opposition Memorandum first argues that the Motion fails to establish the $75,000.00 jurisdictional threshold for diversity jurisdiction.  Defendant is, of course, incorrect.  First, Defendant's argument that the Motion "intentionally disregards"[4] the Order on Final Default Judgment Procedure [D.E. 31] with respect to providing "affidavits of any sum certain" is not well-taken.  As plainly explained at footnote 3 of the Motion (and apparently disregarded by Defendant),

---

admitted to practice law in Florida, but thankfully the legal authority cited therein does appear to exist/is correctly cited.

[3]     For example, the Opposition Memorandum references at least two blogs written by Paul Levy, Esq. that are critical of one of Plaintiff's clients.  Mr. Levy and the principal of that client have written multiple negative blogs about each other and/or engaged in other conduct indicative of their general dislike of each other… for a period of several years.  In any event, the online musings of Mr. Levy and/or other blog articles are hardly relevant to the Motion. While Plaintiffs can certainly reference multiple positive blog articles and/or parade supporters before the Court, the Motion is not a popularity contest but rather a question of law as to whether Plaintiffs are entitled to default judgment following Defendant's willful disregard of his responsibility to participate in this lawsuit.

[4]     See Opposition Memorandum, at p. 10.

2

Plaintiffs' damages in this action are unliquidated and therefore inappropriate for determination on a default judgment motion alone.  See, e.g. Stamper v. Sahai, 318 So. 3d 1, 3 (Fla. 4th DCA 2021) (reversing default judgment awarding damages on defamation claim where trial court accepted affidavit from plaintiff in lieu of conducting trial on damages); see also O'Leary v. Armstrong, No. 25-cv-21417-BLOOM/Elfenbein, 2026 U.S. Dist. LEXIS 29834, at *3 (S.D. Fla. Feb. 11, 2026) ("On June 5, 2025, Plaintiff moved for entry of a final default judgment against Defendant and served him with the motion. Defendant failed to respond to Plaintiff's motion, and in July, the Court granted the motion as to liability on the six defamation *per se* counts and the single Publication of Private Facts Count. As the damages were unliquidated and were required to be proven, the Court scheduled an evidentiary hearing with notice to both parties.") (awarding $750,000.00 in mental anguish damages, $78,000.00 in reputational damages, and $2,000,000.00 in punitive damages).  It is not Plaintiffs that have disregarded the law here – rather, they have strictly followed the correct procedure by recognizing that their damages are unliquidated and instead moving for a judgment of liability to be followed by a trial on damages.

Second, there is no question that the First Amended Complaint satisfies the amount in controversy requirement to establish diversity jurisdiction.  Here, Defendant again loses track of both the law and the allegations of the First Amended Complaint.  With respect to the law, Defendant ignores that, "[u]pon a clerk's entry of default, a defendant is deemed to have admitted the well-pleaded allegations of the complaint."  See Rivero v. Banamerica Fin. Grp., Inc., No. 25-CV-81001-MIDDLEBROOKS, 2026 U.S. Dist. LEXIS 142663, at *2 (S.D. Fla. June 26, 2026); Albion Brand Foundry Ltd. v. P'ships, Unincorporated Ass'ns Identified on Schedule A, No. -1:25-cv-25836, 2026 U.S. Dist. LEXIS 73195, at *7 (S.D. Fla. Feb. 13, 2026) ("Despite having been properly served, the Defaulting Defendants have elected

to admit these allegations by failing to respond to the Complaint and allowing for the entry of clerk's default."). With respect to Plaintiffs' allegations, the First Amended Complaint plainly alleges "at least $100,000.00 in attorneys' fees" Plaintiffs lost from not being retained to defend the malicious prosecution lawsuit, "lost profits in the hundreds of thousands of dollars," and "reputation damage and lost profits" that "far exceed this Court's $75,000.00 threshold for diversity jurisdiction."[5] While the precise amount of reputation damages, lost profits, etc. remains unliquidated, Defendant has admitted the existence of such damages and that they exceed the diversity threshold.

Further, Defendant likewise ignores the underlying action – his alleged copyright infringement of at least fourteen (14) professional photographs – which ultimately led to the filing of this lawsuit after Defendant's threats/videos dissuaded Plaintiffs' client from filing its own lawsuit for infringement. Given that 17 U.S.C. § 504 allows for imposition of statutory damages up to $150,000.00 for willful infringement of any single work and Defendant's conduct here certainly appears to meet the willfulness threshold (especially given his proclamation that the photographs "will remain up, and will be used in future content. In fact, I will find away to use some of these images again today."),[6] it is well beyond speculation that Plaintiff's client would have obtained a judgment for $150,000.00 x 14 = $2,100,000.00 of which Plaintiffs would have been entitled to a percentage pursuant to the terms of their contingency fee agreement with the subject client. Even if a court had awarded $15,000.00 per photograph, Plaintiffs' contingency percentage *alone* would exceed the jurisdictional threshold.

---

[5]     See First Amended Complaint, at ¶ 103.

[6]     Id. at ¶ 22.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Finally, Defendant also ignores that the First Amended Complaint seeks an award of punitive damages as a result of Defendant's willful/malicious conduct. "[I]n ascertaining whether the amount in controversy is greater than $75,000, the court must consider a claim for punitive damages 'unless it is apparent that such cannot be recovered.'" Callesis v. Orgill, Inc., No. 24-21655-CIV-COHN/VALLE, 2024 U.S. Dist. LEXIS 225378, at *6-7 (S.D. Fla. July 10, 2024) (quoting Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir.1987)). As here, "when the claim is defamation per se, liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to consider punitive damages." Lawnwood Med. Ctr., Inc. v. Sadow, 43 So. 3d 710, 729 (Fla. 4th DCA 2010). Thus, given that Plaintiffs have alleged lost profits, reputational damage, and other losses in excess of hundreds of thousands of dollars (even before accounting for punitive damages), they easily satisfy the amount in controversy requirement.

## II.     Anti-SLAPP Statute

The Opposition Memorandum next argues that this lawsuit somehow violates Florida's Anti-SLAPP statute and therefore the case itself should be dismissed. First, Defendant's argument here appears to be a second bite at the proverbial Rule 12(b)(6) apple. Defendant already filed a Rule 12(b)(6) motion which argued that the First Amended Complaint fails to state a claim. That motion was denied. As the Court knows, Rule 12(g)(2) prohibits the filing of successive motions to dismiss raising arguments that could have been raised in an earlier motion. See, e.g. Brooks v. Powell, 706 F. App'x 965, 969 (11th Cir. 2017) (holding that defendant waived exhaustion of administrative remedies defense in Rule 12(c) motion that was not raised in defendant's earlier 12(b)(6) motion); Deffendall v. Stinson, No. 21-14201-CIV, 2023 U.S. Dist. LEXIS 100920, at *5 (S.D. Fla. June 9, 2023) (same). If Defendant wanted to raise Florida's Anti-Slapp statute, he

should have done so in his motion to dismiss – not after he has already defaulted and admitted Plaintiffs' allegations.

Second, it is entirely unclear whether Florida's Anti-SLAPP statute is even applicable in federal court.  See Condo. Ass'n of Parker Plaza Ests., Inc. v. Moreff, No. 22-61638-CIV-DIMITROULEAS, 2023 U.S. Dist. LEXIS 93294, at *2 (S.D. Fla. Mar. 2, 2023) (denying motion to dismiss which asserted that lawsuit violated Florida's Anti-SLAPP statute); Parekh v. CBS Corp., 820 F. App'x 827, 836 (11th Cir. 2020) (holding that appellant waived the argument "that Florida's anti-SLAPP statute should not be applied in federal court" by raising it for the first time on appeal); Gen. Dynamics Elec. Boat Corp. v. Skobic, No. 3:24-cv-387-JEP-MCR, 2026 U.S. Dist. LEXIS 173265, at *13-14 (M.D. Fla. Aug. 4, 2026) ("[T]his Court concludes that the Florida Anti-SLAPP statute does not create an affirmative cause of action, and dismisses counterclaim II with prejudice.").

Finally, even if the statute was applicable, Defendant's position here is wrought with problems.  For example, Defendant raises the Anti-SLAPP statute in an opposition memorandum rather than via motion as required by that statute.  Nor does the Opposition Memorandum comply with the statute as it is devoid of "affidavits" as required by Fla. Stat. § 786.295(4).  Rather, Defendant simply asks the Court to accept his interpretation of his own statements.  Nor does Defendant attempt to explain how *lying* about Plaintiffs' fee billing, *lying* about Plaintiffs somehow conspiring with photographers to place 'honey pots' online, or *lying* about Plaintiffs threatening former clients somehow constitutes 'news reporting' to place such within the purview of the Anti-SLAPP statute.  Defendant produced multiple for-profit videos and YouTube polls/comments that are each clearly defamatory.  Defendant has admitted to the defamatory nature of those videos/posts by virtue of his default.  He cannot now wrap himself in the shroud of 'news

reporting' to defend himself at this stage when he had every opportunity to raise such arguments previously and failed to do so.

### III.     Deceptive and Unfair Trade Practices (Count Two)

The Opposition Memorandum next challenges whether Plaintiffs state a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Again, as with Defendant's Anti-SLAPP argument, Defendant has waived such arguments by not raising them in his motion to dismiss.  Nevertheless, even if considered, Defendant's arguments here are woefully inadequate to avoid a judgment of liability.  Here, Defendant emphasizes that Plaintiffs are bringing a "*consumer*"[7] claim under FDUTPA, citing a number of Florida cases from 1984 – 2008. Defendant (and his presumably non-Florida attorneys shadow writing for him) fail to realize, however, that [t]he statute is not limited to consumer transactions." Taxinet v. Leon, No. 16-24266-CIV-MORE, 2019 U.S. Dist. LEXIS 232691, at *10 (S.D. Fla. Apr. 26, 2019); see also Bosco v. Russian, No. 8:24-cv-2024-MSS-LSG, 2025 U.S. Dist. LEXIS 115779, at *18 (M.D. Fla. June 17, 2025) ("[A] plaintiff need not be a 'consumer' to allege a FDUTPA claim."); Orange Lake Country Club v. Castle Law Grp., P.C., No. 6:17-cv-1044-Orl-31DCI, 2018 U.S. Dist. LEXIS 52511, at *15 (M.D. Fla. Mar. 29, 2018) ("FDUTPA claims are not limited to consumers."); Bluegreen Vacations Unlimited, Inc. v. Timeshare Termination Team, LLC, No. 20-cv-25318, 2021 U.S. Dist. LEXIS 113380, at *18 (S.D. Fla. June 17, 2021) ("Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions.").  Thus, whether Plaintiffs are 'consumers' is immaterial in evaluating their FDUTPA claim.

Defendant's remaining arguments simply re-hash his 'no damages' assertions addressed above and simply proclaim that his actions do not actually constitute a deceptive or unfair trade

---

[7]     See Opposition Memorandum, at p 15.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

practice.  Such self-serving statements (especially in light of his default), however, do not change the law.  As stated in the Motion, defamatory statements can be a deceptive act or unfair practice.  In this case, they certainly are as Defendant used his defamatory statements to create for-profit content for his 1 million subscribers, profiting off statements he knew to be false.

## IV.   Unauthorized Publication of Name or Likeness (Count Three)

The Opposition Memorandum next challenges whether Plaintiffs state a claim for violation of Fla. Stat. § 540.08.  Again, Defendant attempts to raise 12(b)(6) arguments that are wholly improper at this stage (when Defendant had every opportunity to raise such arguments in his motion to dismiss).  But even if Defendant could get a second bite at the apple, his argument that the statute does not apply to him due to his antics being a "bona fide news report" does not hold water.  Defendant did not fancy himself as a journalist.  He was caught serially infringing on a large number of copyrighted photographs and, in an effort to deflect attention from such, engaged in a smear campaign wherein he actively encouraged his > 1 million subscribers to harass and threaten Plaintiffs/their client based upon a number of demonstrably false assertions.  'News reporting' generally does not involve utilizing AI to manipulate photographs to put persons in a negative light, nor does it involve rallying followers to attack persons for having the audacity to send an infringement notice on behalf of their client.  Defendant certainly has not established any defense to Plaintiff's claim for unauthorized publication of name or likeness.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant the Motion.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Dated: August 13, 2026.    COPYCAT LEGAL PLLC
            3111 N. University Drive
            Suite 301
            Coral Springs, FL 33065
            Telephone: (877) 437-6228
            dan@copycatlegal.com

            By: /s/ Daniel DeSouza
              Daniel DeSouza, Esq.

### CERTIFICATE OF SERVICE

   I hereby certify that on August 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record. I further certify that on August 13, 2026, the foregoing document was served via email to Charles A. Peralo (charles@peralo.com).

            /s/ Daniel DeSouza
            Daniel DeSouza, Esq.