**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:26-cv-60910-DSL**

COPYCAT LEGAL PLLC, and
DANIEL DESOUZA,

Plaintiffs,

v.

CHARLES A. PERALO,

Defendant.

---

**DECLARATION OF GRIFFIN C. KLEMA**

I, Griffin C. Klema, submit this declaration in response to the statements made by plaintiff Daniel DeSouza in his opposition to defendant Charles Peralo's motion for referral to the volunteer attorney program, and declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 of the following is true and correct:

**My Practice, Background, and the Nofal/Jaber Litigation**

1. Since being admitted to The Florida Bar in October 2012, I have always been a member in good standing. I have never been sanctioned, admonished, or otherwise disciplined. I am also admitted to practice before the United State Patent and Trademark Office, the Supreme Court of the United States, and multiple other federal district and circuit courts. I have continuously practiced litigation and intellectual property law for more than 14 years.

2. I previously submitted a declaration in Prepared Food Photos, Inc. v. Jaber, no. 22-cv-642 (E.D. Wis.), setting forth in detail how both defendants in that case engaged

me. Plaintiff DeSouza was plaintiff's counsel in that case. I provided that extensive testimony when Mr. DeSouza alleged that I had engaged in various improprieties, including his assertion that I unethically solicited my clients. I am again being forced to refute plaintiff DeSouza's false statements about me with this further declaration.

3. As I previously attested, the vast majority of my clients have come from referrals and cold-calls, and includes civil litigation beyond copyright matters. Occasionally I have offered assistance to attorneys defending victims of copyright trolling, and sometimes provide brief pro bono assistance to the many calls from distressed recipients of threatening demand letters, helping them navigate a difficult and risky legal claim of copyright infringement.

4. I did not solicit either Sharif Jaber or Nofal, LLC, as my prior detailed declaration makes clear. In fact, I have never solicited a client, nor have I ever violated the rules respecting solicitation or otherwise. Yet plaintiff DeSouza has repeatedly leveled accusations without any basis in fact with unequivocal statements like those he has asserted in his recent filing. The multiple cases I have had in which my clients were adverse to those of plaintiff CopyCat Legal were, with few exceptions, all cash-paying clients. That includes *all* of the cases in footnote two of plaintiff DeSouza's filing. In 2021 I added a post to my blog about CopyCat Legal.[1] That post, among other reasons, has likely caused many targets of copyright trolling and other lawyers to contact me (cold call or email) seeking help. I

[1] https://klemalaw.com/blog/2021/12/30/how-to-defend-against-copyright-shakedown-demand-letters-from-copycat-legal-and-its-client-affordable-aerial-photography/

don't spend any of my time hunting for cases adverse to plaintiff DeSouza. I have enough work from people calling for my help, and often refer work onward to other IP lawyers.

5. When I do offer alternative fee arrangements to clients, I have learned that calling such representation "pro bono" can improperly give an opponent, like plaintiff DeSouza, a basis to argue that my clients are not entitled to attorney's fees (which he did in Abdelsayed). While the law allows fees even to pro bono attorneys and public interest nonprofits, my firm's engagements make clear that alternative fee engagements for a defendant mean they will not pay professional fees unless either the client elects to settle or a court awards them through sanction or otherwise. I do not offer alternative fee representation with the "hope" of recovering fees, but rather because I have evaluated the client's case and concluded it has merit, is intellectually interesting, presents novel legal issues that are worthy of being developed, or it is the moral and just thing to do. I also find it inherently rewarding to deliver full defense results (or nominal settlements) in copyright trolling cases like those obtained for my clients in Trends Realty, Stagecoach Sauces, Pink Java Media, 2hill Media, and Baby Gizmo. I recall at least two of those lawsuits were alternative fee, and in neither them did I recover any fees for hundreds of hours of work. But, in representing plaintiffs, I do incorporate a business decision in whether to offer contingency fee representation based on the case's valuation.

**The Trends Realty Litigation**

6. My representation of John Abdeldsayed and Trends Realty USA Corp. in Affordable Aerial Photography, Inc. v. Trends Realty USA Corp., no. 21-cv-81331 (S.D. Fla.) was through the volunteer program, from which I have received emails since at least

2017. I did not know Mr. Abdelsayed or his case prior to the Court's email seeking volunteer attorneys. I also did not know plaintiff DeSouza or his law firm prior to that case. Plaintiff DeSouza quickly proved to be an exceptionally aggressive and abrasive attorney in handling that suit, and he served three Rule 11 motions seeking sanctions against me and my clients. Neither my clients nor I were intimidated by those tactics and none were granted. But it set the tone for how plaintiff DeSouza would conduct himself with me over the ensuing years.

7. The district court litigation in Trends Realty proceeded through discovery and dispositive motion practice. I recall during the deposition of plaintiff DeSouza's client that he characterized my defensive effort as "The Griffin Klema Show," after it became evident that his client's case was baseless. That was just one example of the many, many personal attacks that plaintiff DeSouza has, and continues to make against me and other lawyers, including outright false statements like those he reiterates in this litigation.

8. My time and energy in that case also revealed that plaintiff DeSouza's client, Robert Stevens (owner of Affordable Aerial Photography) had made multiple, repeated false statements in various declarations, all filed by plaintiff DeSouza.[2] My clients' defense also revealed very serious problems with the plaintiff's case, including that it suffered from a substantial limitation on damages pursuant to 17 U.S.C. § 412 (eliminating both statutory damages and attorney's fees for the plaintiff). After more than a year of defending that low-

---

[2] See Defs.' Mot. to Strike, [ECF 120] Affordable Aerial Photography, Inc. v. Trends Realty USA Corp., no. 21-cv-81331 (S.D. Fla. Sept. 21, 2022) (plaintiff's "'dead pixel' testimony is demonstrably false); Order granting in part Mot. to Strike [ECF 128]; and Defs.' Mot to Dismiss, [ECF 138 at 4] (plaintiff "avoided an averse summary judgment through three affidavits of Robert Stevens that contained false testimony").

value suit only to prove it was baseless, and in the face of a dispositive motion on those issues, Mr. DeSouza's client, through Mr. DeSouza, then suddenly claimed that it wasn't worth the continued "effort" after causing the defendants to incur substantial costs and attorney time. The plaintiff and its counsel sought to abandon the lawsuit, rather than risk an adverse merits decision, and agreed to reimburse the defendants thousands of dollars in court costs.

9. To further the purposes of the Copyright Act, my clients then sought to be declared the prevailing parties and awarded their reasonable attorney's fees as a result of the plaintiff's improper copyright trolling.[3] The district court did not reach the issue of plaintiff's improper litigation because it concluded that the defendants were not the prevailing parties due to the plaintiff's voluntary dismissal.

10. The appeal of the fees order was affirmed, which led my clients to file a petition for writ of certiorari in the Supreme Court.[4] It then instructed plaintiff DeSouza's client to file a response. While that petition was pending, I argued that a related case, Lackey v. Stinnie, if not carefully decided, could have serious consequences if not carefully written that could sow further confusion respecting the distinction between when defendants prevail versus when plaintiffs prevail.

---

[3] I use this term in the same way the Seventh Circuit has defined it: "a disreputable business practice—a form of extortion." Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc., 77 F.4th 630, 634 (7th Cir. 2023) (filing hundreds of copyright suits and seeking excessive settlements).

[4] No. 24-267, docket available at: https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/24-267.html

11. While the Supreme Court denied the petition, a footnote in Lackey memorialized key arguments that I had advanced in my clients' then-pending petition, and I have taken credit for that footnote.[5] So while my clients successfully exited the lawsuit brought by plaintiff DeSouza's client without any liability (and were reimbursed their court costs), it ultimately led to a crucial clarification from the Supreme Court.

**How I Became Aware of this Case**

12. I am a regular reader of Professor Eugene Volokh's blog, the Volokh Conspiracy.[6] On July 28, 2026, Prof. Volokh posted about the Court's order imposing sanctions on defendant Peralo,[7] which is how I became aware of this suit. I then reviewed the docket as well as one video allegedly giving rise to plaintiff DeSouza's claims.[8] Given my extensive experience litigating adverse to clients of CopyCat Legal, I thought it noteworthy that Mr. DeSouza started a suit pro se against a target of his firm's trolling efforts.

13. Like Charles Peralo, many of my other clients and prospective clients have told me they thought the boilerplate letters from CopyCat Legal were scams, and threw them away or deleted the emails. I have heard repeatedly from both prospective and actual clients who thought plaintiff DeSouza's letter, on behalf of his clients, demanding payment of $30,000 within two weeks for a single stock photograph online was so far-fetched as to be trick or artifice and thus disregarded as a fraud.

---

[5] https://klemalaw.com/blog/2025/02/25/prevailing-defendants-and-lackey-v-stinnie/
[6] https://reason.com/volokh/
[7] https://reason.com/volokh/2026/07/28/not-what-judges-want-to-see-from-litigants/
[8] https://www.tiktok.com/t/ZP8twwLkS/

14. Based on my quick glance through plaintiff DeSouza's complaint, I concluded Peralo was being subjected to an unreasonable suit whose goal was not to seek recompense for actual harm but rather strategically to silence him or obtain a judgment (or confidential settlement) that would give the appearance of intimidation to any other targets of copyright trolling who would consider doing anything similar. Indeed, the mere pendency of the suit, like copyright trolling, imposes significant costs on defendants—so much so that they often settle rather than fight even where the case is baseless. Plaintiff DeSouza's complaint also seemed to unfairly paint a one-sided picture of his claimed success in various cases, including Abdelsayed. That was repeated in plaintiff DeSouza's recent filing directed at me specifically.

15. I therefore sent Peralo an email providing information that tends to prove the truthfulness of his statements about plaintiff DeSouza, including the fact that Judge Middlebrooks entered an order characterizing Mr. DeSouza's conduct as "unbecoming of a forthright litigant" as well as Attorney Paul Levy's characterization of plaintiff DeSouza essentially condoning perjury of one of his clients. Mr. DeSouza's quotation of only a portion of my email in this case omits that information, and I therefore provide the email in full as Exhibit 1.[9] I did not solicit Peralo in that email or otherwise.

16. The third item in that email is my personal opinion of why the Supreme Court declined to grant certiorari in the Abdelsayed case (and other two cases), which is based on a number of "pool memos" written by the Justices' law clerks that have been made public.

[9] For reasons unclear, Peralo disclosed that email to plaintiff DeSouza, and therefore waived any potential attorney-client privilege that may have existed respecting that communication.

For example, Justice Gorsuch, when he was clerking for Justice Kennedy, recommended denial of a cert petition because "tackling a major constitutional question with the level of representation evident in the petn (or even reply) would be a risky enterprise."[10] Mr. DeSouza's opposition brief was principally string-cites and block quotes, with only about one-third devoted to original thought. I was therefore disappointed with his effort in his response brief and continue to believe that his abilities negatively impacted certworthiness of the questions presented.

17. I concluded my email with my further opinions of plaintiff DeSouza's *abilities* as counsel, not his personal character, borne of my own experience as well as what multiple other attorneys I have spoken to have said about him. They were intended to be private for Peralos' benefit, said in full candor, and based on my direct knowledge and experience.

18. Peralo then called me, and we discussed the case and plaintiff DeSouza's copyright enforcement practice generally. He asked if I would be willing to take on the representation. Unfortunately, I declined because at present my practice is at capacity and for the further reason that I am not substantively familiar with defamation and free speech law. Additionally, and contrary to plaintiff DeSouza's false statements about my intent, I declined representation even though there does appear to be a strong likelihood that Peralo should prevail on at least the FDUTPA claim (the sole claim with which I am familiar) and be possibly become entitled to attorney's fees.

**Plaintiff DeSouza's Ongoing Personal Attacks**

---

[10] Or these other observations: "If the Court is interested in overruling *Hans*, I suggest that it wait for a petn that is briefed more competently than this one." And "The briefing is also surprisingly bad."

19. Plaintiff DeSouza's conduct towards me, in the form of outright false statements, baseless Rule 11 motions, *ad hominem* attacks, and general unprofessionalism has now spanned years, all after my successful representation of two defendants against his client in Abdelsayed. Based on other lawyers adverse to him, my experience is not unique. Plaintiff DeSouza often lashes out at his opponent's person rather than their arguments, as the multiple other court filings I have read in which defense attorneys raise similar concerns.

20. For my part, I have pushed back on plaintiff DeSouza's improper remarks in many cases over the years, including the following filings in which I called out the issue explicitly:

a. Defs.' Sur Reply, Affordable Aerial Photography, Inc. v. Trends Realty USA Corp., no. 21-cv-81331 (S.D. Fla. Nov. 22, 2022) (plaintiff's counsel's "*ad hominem* attacks are not well taken either. It mentions the undersigned personally no less than fifteen times, and casts a number of unprofessional aspersions");

b. Broden v. Private Business Jets, LLC, no. 24-cv-10880 (D.Mass. Mar. 22, 2025) ("Mr. DeSouza's hyperbole and obfuscation with *ad hominem* attacks of counsel" which included "see if you can act like a normal human being");

c. Def.'s Reply, Harrington v. Island Villa Rental Props., Inc., no. 4:23-cv-10080 (S.D. Fla. Feb. 23, 2024) (Mr. DeSouza's "continued *ad hominem* is not well taken, but what the undersigned counsel has come to expect from CopyCat Legal over a number of years of litigation across many cases"); and

d. Def.'s Reply, Prepared Food Photos, Inc. v. Jaber, no. 22-cv-642 (E.D. Wis. June 27, 2025) (Mr. DeSouza's "rhetoric and baseless personal attacks are not well taken [but what the] undersigned has become accustomed to" from him).

21. Because of that relentless unprofessionalism, I referred to plaintiff DeSouza as "my favorite opposing counsel" in my email to Peralo. It is not that I dislike Mr. DeSouza personally (indeed, I recall one of our early phone calls discussing growing mangos and raising children), but rather that working adverse to him in a disputed matter is less than enjoyable, particularly compared to other lawyers I have been adverse to. I have litigated against myriad attorney personalities over my career, and those with a penchant for eyepoking and namecalling are the least pleasant to do our already stressful job as litigators. Outright false statements simply compound that already improper conduct.

Dated: August 18, 2026

__/s/ Griffin Klema________
Griffin C. Klema, Esq.
Fla. Bar No. 100279
Griffin@KlemaLaw.com
**Klema Law, P.L.**
PO Box 172381
Tampa, FL 33672
420 W. Kennedy Boulevard
Tampa, FL 33606
Telephone: 202-713-5292

# Exhibit 1

Exhibit 1

Exhibit 1

## Griffin Klema

**From:** Griffin Klema <griffin@klemalaw.com>
**Sent:** Wednesday, July 29, 2026 9:16 PM
**To:** 'Charles@Peralo.com'
**Subject:** More dirt
**Attachments:** Filed Amici Brief.pdf

I was reading a post on Reason.com and lo and behold, my favorite opposing counsel was featured! I took a look at the recent case he filed and thought I'd pass along some other things that you might find interesting:

1. Judge Middlebrooks nearly sanctioned him for being dishonest: "While Plaintiffs choice to bring this claim against Mr. Ditommaso and exclude the factual context pertaining to Re/MAX may not have risen to the level of fraud on the court, it was **conduct unbecoming of a forthright litigant in federal court and the omission borders on deceitful**." AAP v. Ditomasso, no. 22-cv-80030 (SD Fla Nov. 9, 2023).
2. The National Law Review (and Pool World) just filed a motion in my 7th Circuit appeal, asking to file an amicus brief. That brief basically says that his firm was dishonest with presenting information on behalf of clients that was untrue. https://www.courtlistener.com/docket/73195967/prepared-food-photos-inc-v-sharif-jaber/?order_by=desc (not yet docketed, but copy attached). The motion (docketed as DE 19) also provides some public details.
3. In my personal opinion, he didn't "successfully" oppose my client's SCOTUS cert petition... his response was trash, and the justices will reject a case if they think one of the litigants (i.e. lawyers) is not up to snuff. I know they were interested in the case when they asked for a response from him ("Response Requested" on the docket), and when they saw that, they may have had doubts about his abilities at that level of advocacy.

Basically, he and his clients are copyright trolls. In my opinion, he's not a good lawyer, but just happened upon a good case type (by chance... I know some background between him and his now former partner James D'Loughy), and he's muddled his way through not having to actually litigate until he runs into someone like me or Paul Levy.



**GRIFFIN KLEMA**
Intellectual Property & Litigation
**Klema Law, P.L.**

cell: 202-713-5292
video call: zoom
Griffin@KlemaLaw.com